# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RONALD KENNETH NORFLEET,

Defendant-Appellant.

FOR PUBLICATION
November 8, 2016
9:05 a.m.

No. 328968
Grand Traverse Circuit Court
LC No. 15-12072-FC

Before: SHAPIRO, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendant was convicted of multiple drug offenses and sentenced to five consecutive sentences. We affirm his convictions but remand for further proceedings as to sentencing.

This case presents an issue of first impression regarding appellate review of a trial court's decision to impose consecutive sentences where such an action is not mandatory. We hold that where a statute grants a trial court with discretion to impose a consecutive sentence, the trial court's decision to do so is reviewed on an abuse of discretion standard, i.e., whether the trial court's decision was outside the reasonable and principled range of outcomes. See *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Accordingly, trial courts imposing one or more discretionary consecutive sentences are required to articulate on the record reasons for each consecutive sentence imposed.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with and convicted of seven drug-related offenses. The charges were based on activities conducted by defendant in concert with two other individuals, Bryan and Alysha Nerg, and several of the sales involved Angela Bembeneck. Officers observed Alysha Nerg delivering what they believed to be heroin to Bembeneck on February 13, 2015. Bembeneck and Alysha both testified at trial that Bembeneck had ordered the heroin by calling defendant who in turn called Alysha and told her to make the delivery. Officers conducted a

-1-

traffic stop on Bembeneck shortly after the suspected exchange.[1] Bembeneck consented to a search and admitted to the officer who pulled her over that she had heroin in her possession. Bembeneck then agreed to serve as a confidential informant and, on police direction, called defendant to order more heroin. Alysha testified that defendant called her to have her deliver more heroin to Bembeneck. Bembenck made the purchase with "controlled buy funds" provided by the police and received heroin from Alysha in exchange for those funds. In addition to these two exchanges, Bryan testified that on the same date he delivered cash to defendant, who was in his car, in exchange for heroin.

Following the controlled buy, search warrants were executed at both defendant's residence and the motel where Bryan and Alysha Nerg were residing. Heroin was found in the Nergs' motel room, but no heroin was found at defendant's residence or in his Jeep. Police testified that during the search of defendant's residence they found large amounts of cash, including the "controlled buy funds" that Bembeneck used in the exchange with Alysha, safe deposit box keys, two BB gun pistols, and baggies. Officers testified that, while no heroin was found in defendant's home, a drug dog did alert to drugs at several locations in the house and that the drug dog was not able to search defendant's kitchen due to the presence of an evidence tabulation station that had been set up there.

Defendant's ex-girlfriend, Desseray Richey, testified that after learning that officers had searched defendant's home, she went there and took what she "suspected could have been drugs" out of the kitchen and flushed them down the toilet. Richey also testified that she had previously picked up cash and made deliveries for defendant including deliveries to the Nergs. Richey testified that defendant told her the deliveries were "protein powder," which he claimed to sell as part of his business as a personal trainer.[2]

Defendant was charged with three counts of delivery of less than fifty grams of heroin, MCL 333.7401(2)(a)(iv), based upon the two deliveries to Bembeneck by Alysha Nerg, as to which the prosecution alleged defendant acted as an aider and abettor, and his direct delivery in his Jeep to Bryan Nerg the same day. He was also charged with one count of possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(iv), based upon his control over the heroin found in the Nergs' motel room, one count of conspiracy to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(iv) and MCL 750.157a, one count of maintaining a drug house, MCL 333.7405(d), and one count of maintaining a drug vehicle, MCL 333.7405(d).

---

[1] The officer who conducted the traffic stop testified that the stop was predicated on her observance that Bembeneck was not wearing a seat belt and was driving with her license plate partially covered.

[2] Richey testified that at one point she thought the substance was crack cocaine but that when she asked defendant he got upset and told her it was "dope." The parties vigorously dispute whether Richey ever identified the substance as heroin prior to being told to use that word by the police and prosecutor.

Defendant was convicted on all charges and was sentenced as a habitual offender, fourth offense, MCL 769.12, at the top of the recommended guideline range on each charge. He was sentenced to five terms of 134 months to 40 years, one for each of the three counts of delivery of less than fifty grams of heroin, one for the count of possession with intent to deliver less than fifty grams of heroin, and one for conspiracy to deliver less than 50 grams of heroin. He was also sentenced to two terms of 46 months to 15 years; one for maintaining a drug house and one for maintaining a drug vehicle. The trial court directed that each of the sentences for the first five counts be served consecutively to the other four. Thus, defendant will first become eligible for parole consideration after 55 years.

## II. DEFENDANT'S CHALLENGE TO HIS CONVICTIONS

Defendant raises several issues that he claims merit reversal of some or all of his convictions. The first three arguments were raised in the brief submitted by appellate counsel, and the final three were raised in defendant's Standard IV brief. Defendant is not entitled to relief on any of these grounds.

First, defendant argues that his trial counsel was ineffective for failing to move for a mistrial when the jury heard an audio recording of defendant's phone call where defendant allegedly made references to his prior murder conviction and violent past. Allowing the jury to hear such references could have had a prejudicial impact. However, contrary to defendant's claim, there is no indication in the record that this portion of the audio recording was ever played to the jury. Defendant offers no evidence, other than his own affidavit to support his claim that the statements were in fact played to the jury. In that affidavit defendant states that the entire recording of this phone call was played for the jury, a contention the record clearly rebuts. The record shows that differing portions of this phone call were played to the jury, not that the tape was played in its entirety. Additionally, because no *Ginther*[3] hearing was held, "review is limited to mistakes apparent on the record." *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994). Because we find no mistake on the part of trial counsel apparent on the record, we conclude that defendant is not entitled to relief on his ineffective assistance of counsel claim.

Second, defendant argues that the trial court erred in instructing the jury on the elements of the charges for keeping and maintaining a drug house and keeping and maintaining a drug vehicle. Specifically, defendant argues that the jury was not instructed on the Supreme Court's construction of the phrase "keep or maintain" as requiring controlled substance use to be both continuous and a substantial purpose for which the house or vehicle was used. *People v Thompson*, 477 Mich 146, 156-157; 730 NW2d 708 (2007). However, the Supreme Court has held that "jury instructions that were somewhat deficient may nonetheless, when viewed as a whole, have sufficed to protect a defendant's rights when the jury would have convicted the defendant on the basis of the evidence regardless of the instructional error." *People v Kowalski*, 489 Mich 488, 506; 803 NW2d 200 (2011).

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

While defendant is correct that the jury was not instructed on the definition of "keep or maintain" or on the requirement of continuous use, there is no error because the jury would have convicted defendant on the basis of the evidence at trial even if the jury had been more fully instructed on the intricacies of the "keep or maintain" element. Defendant relies on the fact that no heroin was found by the police in either his home or his Jeep. However, had such evidence been found and presented it would not be direct evidence that the keeping or selling was continuous or that the keeping or selling was a substantial purpose of the home or Jeep. The evidence of continuous use of his home and Jeep to keep and sell heroin and the evidence that a substantial purpose of his home and Jeep was to keep and sell heroin was the testimony of various witnesses indicating that the Jeep was used to make heroin deliveries and that the home was used to store both the heroin and the proceeds of the heroin's sale. Therefore, defendant cannot show that the alleged instructional error prejudiced him in any way because the alleged lack of evidence does not correspond to the alleged instructional omission; he would have been convicted on the basis of the evidence admitted regardless of the instructional error. See *Kowalski*, 489 Mich at 504-506.

Third, defendant argues that there was insufficient evidence to support his conviction of possession with the intent to deliver less than 50 grams of heroin. Defendant argues that there was insufficient evidence to convict him of possession with intent to deliver because there was no evidence that he possessed the heroin recovered in the Nergs' motel room. However, "[a] person need not have actual physical possession of a controlled substance to be guilty of possessing it." *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992). "Possession is a term that signifies dominion or right of control over the drug with knowledge of its presence and character." *People v Nunez*, 242 Mich App 610, 615; 619 NW2d 550 (2000) (internal citations and quotations omitted). Both Bryan and Alysha testified that the substance recovered from their motel room by the police was heroin and that defendant had control over it at the time because he was the one that directed them who to deliver it to. This testimony was corroborated by Bembeneck who testified that defendant was the one whom she would call to request the heroin from and that Bryan and Alysha simply delivered it. There was clear evidence of a sufficient nexus between defendant and the contraband for the jury to conclude that under the totality of the circumstances, defendant had constructive possession of the heroin.

Fourth, defendant argues that the prosecutor did not timely serve defendant with notice of its intent to enhance defendant's sentence. The felony information in this case, dated March 24, 2015, contains a Fourth Habitual Offender Notice listing the prior convictions that would be relied upon for purposes of sentence enhancement. The arraignment took place on March 26, 2015. MCL 769.13(2) states that notice of intent to seek a sentencing enhancement "may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense." Defendant had notice of the prosecution's intent to seek sentencing enhancement at his arraignment, and this argument is without merit.

Fifth, defendant argues that the prosecution knowingly used the testimony of his ex-girlfriend, Richey, which he alleges was false and perjured. Defendant did not raise this issue

below and it is unpreserved.[4]  Attached to defendant's standard 4 brief is an affidavit of Richey signed several days after trial, in which she attests that she lied in her trial testimony and that she was told to stress certain alleged falsehoods such as that defendant told her he sold heroin and that she flushed drugs down the toilet.  "As a rule the court is not impressed by the recanting affidavits of witnesses who attempt to show that they perjured themselves at the trial." *People v Smallwood*, 306 Mich 49, 55; 10 NW2d 303 (1943).  Moreover, Richey's trial testimony did not stand alone, defendant's guilt was demonstrated by the testimony of numerous other witnesses including, the Nergs, Bembeneck, and police officers.  Additionally, physical evidence in the form of the recovered buy funds supported defendant's conviction.

Sixth, defendant argues that he is entitled to reversal because the trial court failed to suppress documents seized during a search of his jail cell, which he claims included notations concerning trial strategy that he drafted at the direction of his attorney.  We disagree.  A hearing revealed that most of the documents with which defendant was concerned had not been seized and that only a few pages were transmitted to the prosecutor.  In addition, there is no indication on the documents that they were prepared for counsel, and there is no testimony or affidavit so asserting.  Also, the prosecutor agreed on the record that the materials would not be used at trial as either substantive evidence or for purposes of impeachment, and there is no indication in the record that they were used in any fashion to aid the prosecution.[5]  Finally, the court granted leave to defense counsel to schedule a further hearing if it appeared that additional documents had been reviewed though not seized, and no further hearing was sought.

Defendant's convictions are affirmed.

### III.     DEFENDANT'S SENTENCING CHALLENGES

Defendant raises several issues in regard to his sentencing.  First, defendant argues that the trial court abused its discretion in ordering consecutive sentences for his conviction of conspiracy to deliver heroin, his conviction of possession with intent to deliver heroin, and his three convictions of delivery of heroin.  Second, in his standard 4 brief, defendant argues that his sentence violates his Sixth Amendment rights as articulated by the Supreme Court's decision in *People v Lockridge*, 498 Mich 358, 388-392; 870 NW2d 502 (2015).  Finally, defendant argues that the trial court abused its discretion in allowing his Presentence Investigation Report (PSIR) to contain statements asserting that defendant is affiliated with a major Detroit street gang.

### A.     THE IMPOSITION OF CONSECUTIVE SENTENCES

In *People v Milbourn*, 435 Mich 630, 635-636; 461 NW2d 1 (1990),[6] the Supreme Court held that appellate review of sentences imposed by the trial court must ensure that the sentences

---

[4] Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights.  *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

[5] See, *Bishop v Rose*, 701 F 2d 1150, 1151, 1154-1157 (CA 6, 1982).

[6] *Milbourn* was overruled on other grounds by statute as recognized in *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011) (stating that it did not appear the "rule of *Milbourn*, survived the Legislature's enactment of the statutory sentencing guidelines").  However, the

imposed comply with the principle of proportionality. *Milbourn* held that the principle of proportionality requires that "given sentence[s] . . . imposed by the trial court [] be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id.* at 636. A central proposition to the holding of *Milbourn* was that discretionary sentencing decisions are subject to review by the appellate courts to ensure that the exercise of that discretion has not been abused. *See id.* at 662, 664-665.[7]

We recognize that each sentence is to be reviewed on its own merits. We held in *People v Warner*, 190 Mich App 734, 735-736; 476 NW2d 660 (1991), that a proportionality challenge to a given sentence must be based on the individual term imposed and not on the cumulative effect of multiple sentences.

No case has held, however, that the decision to impose a consecutive sentence rather than a concurrent one is unreviewable. In *People v Miles*, 454 Mich 90, 92, 95; 559 NW2d 299 (1997), the Supreme Court rejected the defendant's proportionality challenge to the cumulative term resulting from a discretionary sentence and a consecutive two year felony-firearm sentence. However, the trial court in *Miles* could not and did not exercise any discretion as to whether to impose a consecutive sentence because the legislature has mandated that felony-firearm sentences be imposed consecutive to any other. MCL 750.227b(3). By contrast to the felony-firearm statute at issue in *Miles*, the decision of a sentencing court to impose a consecutive sentence under MCL 333.7401(3), the statute under which the consecutive sentences were imposed in this case, is discretionary. *People v Doxey*, 263 Mich App 115, 117; 687 NW2d 360 (2004). Therefore, although the combined term is not itself subject to a proportionality review, the decision to impose a consecutive sentence where not mandated by statute, is reviewable for an abuse of discretion.

In *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003), the Supreme Court stated that:

> At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome. . . . When the trial court selects one of these principled outcomes, the trial court has not abused its

Supreme Court recently determined that the mandatory application of the statutory sentencing guidelines was in violation of the Sixth Amendment of the United States Constitution. *Lockridge*, 498 Mich at 364-365, 389, 391-392. Additionally, in *People v Steanhouse*, 313 Mich App 1, 47-48; 880 NW2d 297 (2015) lv gtd 499 Mich 934 (2016), this Court held that "a sentence that fulfills the principle of proportionality under *Milbourn* and its progeny, constitutes a reasonable sentence under *Lockridge*."

[7] In responding to the dissent, the *Milbourn* Court stated that "[t]he gravamen of the dissent is that the enormous sentencing discretion which the Legislature left to the judiciary is, in sharp contrast to every other discretionary sphere of judicial activity," and that under the dissent's rationale, a sentencing court's discretion could "be exercised at will in the trial court to the extent that appellate courts may do nothing more than assure themselves that the trial court has not exceeded the statutory maximum." 435 Mich at 662.

discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment. An abuse of discretion occurs, however, when the trial court chooses an outcome falling outside this principled range of outcomes.

We find the standard for reviewing a trial court's decision for an abuse of discretion articulated in *Babcock* to be the appropriate vehicle by which to review a sentencing court's discretionary decision to impose consecutive sentences under MCL 333.7401(3). The Supreme Court has referred to the *Babcock* articulation as the "default" abuse of discretion standard. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Review of a discretionary decision requires that the trial set forth the reasons underlying its decision. See *People v Broden*, 428 Mich 343, 350-351; 408 NW2d 789 (1987) (holding that in order to aid the appellate review of whether an abuse of discretion has occurred at sentencing the trial court is required to articulate on the record reasons for imposing a particular sentence). Further, MCL 333.7401(3) provides discretion to impose "*A term* of imprisonment . . . to run consecutively." Thus, a trial court may not impose multiple consecutive sentences as a single act of discretion nor explain them as such. The decision as to each consecutive sentence is its own discretionary act and must be separately justified on the record. The statute clearly provides that a discretionary decision must be made as to each sentence and not to them all as a group. Moreover, this is in accord with the Supreme Court's statement that Michigan has a "clear preference for concurrent sentencing" and that the imposition of "a consecutive sentence is strong medicine." *People v Chambers*, 430 Mich 217, 229, 231; 421 NW2d 903 (1988) (internal quotations and citation omitted).[8] While imposition of more than one consecutive sentence may be justified in an extraordinary case, trial courts must nevertheless articulate their rationale for the imposition of each such sentence so as to allow appellate review. As the *Milbourn* Court aptly stated, "[d]iscretion, however, is a matter of degree, not an all or nothing proposition." 435 Mich at 664. Additionally, we believe that requiring trial courts to justify each consecutive sentence imposed will help ensure that the "strong medicine" of consecutive sentences is reserved for those situations where so drastic a deviation from the norm is justified.

In the instant case, the trial court spoke only in general terms stating that it took into account defendant's "background, his history, [and] the nature of the offenses involved." Moreover, it did not speak separately as to each consecutive sentence, each of which represents a separate exercise of discretion. Therefore, it did not give particularized reasons to impose each sentence under MCL 333.7401(2)(a)(*iv*) consecutive to the other, with reference to the specific offenses and the defendant. Remand is therefore necessary so that the trial court can fully articulate its rationale for each consecutive sentence imposed. We retain jurisdiction so that after

---

[8] *Chambers* concerned a question of whether the statutory authorization of consecutive sentences for defendants who commit felonies while on bond for a prior felony, MCL 768.7b(2), allowed "the trial court first in time to render sentence" the authority to impose the consecutive sentence or whether that statute afforded the authority to impose the consecutive sentence solely "to the court last in time to impose sentence." 430 Mich at 219. The Court held that the "first-in-time sentencing court lacked discretionary consecutive sentencing authority." *Id.* at 231-232.

being apprised of the trial court's rationales we may review its decisions for an abuse of discretion.

### B.    DEFENDANT'S *LOCKRIDGE* CHALLENGE

In order to determine whether defendant is entitled to relief under *Lockridge*, it is necessary to determine whether or not facts admitted by defendant and facts found by the jury were sufficient to assess the minimum number of OV points necessary for "defendant's score to fall in the cell of the sentencing grid under which he . . . was sentenced." 498 Mich at 394. If the facts defendant admitted and the facts found by the jury "were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced" then defendant is entitled to have the case "remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Id.* at 395, 397 (emphasis in original).

Defendant's sentencing information report shows that he received a total of 50 OV points placing him in OV level V. Because 50 points is the minimum number of points in OV level V, MCL 777.65, if any of the OV points were the result of judicial fact-finding, as opposed to facts admitted by defendant or found by the jury, then defendant's guideline minimum range was impermissibly increased in violation of *Lockridge*. Defendant first alleges that OV 12 was an instance where his OV range was increased as the result of judicial fact-finding.[9] OV 12 states that if "[t]hree or more contemporaneous felonious criminal acts involving other crimes were committed" then 10 points should be scored. MCL 777.42(1)(c). Zero points are to be scored if "[n]o contemporaneous felonious criminal acts were committed." MCL 777.42(1)(g). The statute defines a felonious criminal act as contemporaneous if "[t]he act occurred within 24 hours of the sentencing offense" and if "[t]he act has not and will not result in a separate conviction." MCL 777.42(2)(a). Defendant was scored 10 points for OV 12.

The scoring of 10 points for OV 12 was supported by the testimony of Bryan Nerg who stated that on the evening of February 12, 2015 he received about 20 grams of heroin from defendant and that he packaged up this heroin and sold it to 10-12 people on February 13, 2015. This testimony was corroborated by police officers who testified to seeing Bryan's van coming and going from his motel room throughout the day. While this evidence was sufficient to support the trial court's scoring on OV 12,[10] because the variable specifically states that it cannot

---

[9] In addition to his *Lockridge* challenge, defendant argues on appeal that the trial court's scoring of 10 points for OV 12 was not supported by the record.

[10] This evidence is sufficient to defeat defendant's argument on appeal that the trial court erred in scoring OV 12 at 10 points. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). Given that witness testimony supported the scoring, we are not left with a definite and firm conviction that the scoring was erroneous. Defendant's argument that trial counsel was ineffective for raising this

be scored for criminal acts for which there was a conviction, it stands that any criminal act scored under OV 12 would not be a criminal act found by the jury. Additionally, there is no indication in the record that defendant has ever admitted to these other criminal acts that Bryan and Alysha testified to. Once the 10 points for OV 12 are removed from defendant's sentencing information report, he falls from OV level V to level IV. Therefore, the facts admitted by defendant and found by the jury are insufficient for his score to fall in the cell of the sentencing grid under which he was sentenced. Defendant is entitled to a *Crosby* remand for "the trial court to determine whether [it] would have imposed a materially different sentence but for the constitutional error." *Lockridge*, 498 Mich at 395, 397.

### C.  REFERENCES TO GANG AFFILIATION IN THE PSIR

Defendant's PSIR states that defendant "is affiliated with the major street gang in Detroit, MI called Young Boys, Inc." At sentencing, defendant asked that this gang reference be stricken from the PSIR. The trial court found the reference to be accurate relying solely on the prosecutor's assertions that a previous PSIR from 1987 referenced a contact defendant had with Detroit police where defendant was found with heroin in gang packaging, that Richey had stated during an interview with police that defendant told her he had been an enforcer for this Detroit gang while showing her the block that he used to control, and that a cell phone seized from defendant's residence showed an entry to the gang's Wikipedia page.

The PSIR "is presumed to be accurate unless the defendant effectively challenges the accuracy of the factual information." *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997). The prosecution "has the burden to prove the [challenged] fact by a preponderance of the evidence" upon an effective challenge by a defendant. *People v Waclawski*, 286 Mich App 634, 690; 780 NW2d 321 (2009). We find that the trial court abused its discretion in finding that the prosecution met its burden to prove the challenged statement in the PSIR. No evidence was submitted to support those allegations. Even assuming the truth of the prosecutor's assertions,[11] they at most established that defendant was at one time affiliated with this gang. They do not establish that defendant *was affiliated* with it at the time of the alleged crimes or thereafter, as the PSIR suggests. Accepting the conclusion in the PSIR based solely on the prosecutor's statements suggesting defendant had past gang affiliations was an abuse of discretion. On remand, we direct the trial court to remove these statements in the PSIR unless a preponderance of the evidence supports their accuracy.

### IV.  CONCLUSION

We remand this case to the trial court for a *Crosby* hearing to determine whether or not it would have imposed a materially different sentence if it had not been bound by the sentencing guidelines. If the trial court concludes that it would not have imposed a materially different

---

issue is also without merit. See *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000) (stating that "[t]rial counsel is not required to advocate a meritless position").

[11] While we note that the rules of evidence are not applicable at sentencing, *Waclawski*, 286 Mich App at 690, it cannot go unnoticed that the prosecutor's statements contained multiple levels of hearsay and that the prosecutor did not provide any independent verification for the truth of his assertions.

sentence, then we direct the trial court to articulate its rationale for imposing each of the five consecutive sentences that it ordered in this case. However, if the trial court concludes that it would have imposed a materially different sentence had it not been bound by the guidelines, then it should re-sentence defendant. If the trial court does re-sentence defendant, it must provide a rationale for each sentence that it, in its discretion, determines should be served consecutively. We also direct the trial court to remove references in defendant's PSIR that are not supported by a preponderance of the evidence. In all other respects we affirm.

Affirmed in part and remanded for further proceedings consistent with this opinion. We retain jurisdiction.


/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto

# Court of Appeals, State of Michigan

## ORDER

People of Michigan v Ronald Kenneth Norfleet

Docket No. 328968

LC No. 15-12072 FC

Douglas B. Shapiro
Presiding Judge

Joel P. Hoekstra

Deborah A. Servitto
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 42 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

NOV 08 2016

Date

Chief Clerk