*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHAD MICHAEL STIFF,

        Defendant-Appellant.

UNPUBLISHED
February 11, 2021

No. 350070
Shiawassee Circuit Court
LC No. 2019-003545-FH

Before: BOONSTRA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of one count of accosting a child for immoral purposes, MCL 750.145a, and one count of using a computer to commit a crime, MCL 752.796; MCL 752.797(3)(d). The trial court sentenced defendant to consecutive prison terms of 17 to 48 months for the accosting conviction and 17 to 84 months for the using a computer to commit a crime conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant posted an advertisement on Doublelist.com, a website on which users post personal advertisements, frequently of a sexual nature. Defendant's ad sought a bisexual or gay man to "give head" (perform oral sex on defendant) and requested that respondents provide their pictures, age, and location. On May 11, 2018, using the e-mail address "Xboxforlife456@gmail.com," Michigan State Police Trooper Evan Zapolski responded to defendant's advertisement, pretending to be a 14-year-old boy named "Jake." Trooper Zapolski's response clearly indicated that "Jake" was 14 years of age. Using the e-mail address "Ronjon953@gmail.com," defendant replied to "Jake,"[1] stating, "I would love nothing more than

---

[1] Although "Jake" was actually Trooper Zapolski, MCL 750.145a provides, in relevant part, that "[a] person who accosts, entices, or solicits . . . an individual *whom he or she believes is a child less than 16 years of age* . . . with the intent to induce or force that . . . individual to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other

a blowjob from a young guy. I just don't want to go to jail." Defendant subsequently sent a shirtless picture of himself along with two pictures of his genitals. Defendant's face was not shown in these photos. Defendant also asked "Jake" to send pictures of himself. At first, defendant requested only a picture of "Jake's" face but later also requested a picture of "Jake's" genitals. On May 16, 2018, defendant and "Jake" made plans to meet the following weekend when "Jake's" mother was out of town. Defendant and "Jake" never met.[2]

Trooper Zapolski obtained a search warrant for defendant's house based on the email exchanges, and interviewed defendant during the search. Trooper Zapolski told defendant that "Jake" had run away from home and that his mother had seen communications from defendant after looking through her son's phone. Defendant admitted that Ronjon953@gmail.com was one of his e-mail addresses. At first, defendant claimed not to remember having a conversation with "Jake." However, he later stated that he remembered "bits and pieces" of the conversation. When Trooper Zapolski showed him a copy of the e-mail conversation, defendant stated that he had sent the photographs of himself and his genitals.

Before trial, defense counsel moved to preclude the admission into evidence of the e-mailed photographs. Defense counsel stated that defendant would stipulate that he was the person in the photographs and that he had prepared an exhibit of the email conversation, but with the photos redacted. The trial court denied defendant's motion, but encouraged the prosecution "to use its best discretion in limiting the amount exposure of these intimate photographs." The unredacted version of the seven-page e-mail conversation was admitted into evidence, and on the second day of trial, a binder with the exhibits was given to each juror. The 40-minute interview between defendant and Trooper Zapolski was also played for the jury.

The jury convicted defendant as described. At sentencing, the trial court assessed 15 points for offense variable (OV) 10, stating that although defendant's initial advertisement "did not originally constitute predatory conduct, his subsequent messages did." The trial court also ordered that defendant serve his sentences consecutively. This appeal followed.

## II. PHOTOGRAPHIC EVIDENCE

Defendant argues that the trial court abused its discretion by admitting into evidence the two unredacted photographs of his penis. We conclude that any error in this regard was harmless.

"When the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612

---

act of depravity or delinquency, or who encourages . . . an individual whom he or she believes is a child less than 16 years of age to engage in any of those acts is guilty of a felony . . . ." [Emphasis added.]

[2] Defendant's conviction was not based on his unsolicited sending of explicit photographs to someone he believed to be an underage child, but was instead based on his efforts to convince "Jake" to send explicit photographs in return (as well as to ultimately meet for a sexual encounter).

(2014).  An abuse of discretion exists if a trial court's decision falls outside the range of principled outcomes.  *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

Generally, relevant evidence is admissible.  MRE 402; *People v Roper*, 286 Mich App 77, 91; 777 NW2d 483 (2009), lv den 486 Mich 928 (2010).  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  MRE 401.  Even if evidence is relevant under MRE 401, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"  MRE 403.  Under MRE 403, the court must balance a variety of factors, including the time necessary to present the evidence, whether the evidence is unnecessarily cumulative, how probative the evidence is, the importance of the evidence to prove the fact sought to be proved, whether the evidence would confuse or mislead the jury, and whether there is an alternate and less harmful way to prove the fact sought to be proved.  *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

Here, the parties disagree about the probative value and prejudicial effect of the photographs.  Defendant argues that the photographs were merely cumulative of the email conversations and of Trooper Zapolski's testimony, and that the admission of the photographs themselves was unduly prejudicial.  The prosecution maintains that the photographs were relevant corroborative evidence, and that the distasteful nature of the photographs does not make them "unduly" prejudicial.  We need not decide the issue, however, because we conclude that the admission of this evidence, even if erroneous, was harmless.  A preserved nonconstitutional error does not warrant reversal unless "it is more probable than not that the error was outcome determinative."  *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).  An error is outcome-determinative if it undermined the reliability of the verdict.  *People v Shorter*, 324 Mich App 529, 542 n 7; 922 NW2d 628 (2018).  "In other words, the effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error."  *Lukity*, 460 Mich at 495.

During his interview with Trooper Zapolski, defendant admitted that he had sent the photographs.  The photographs were also found on defendant's cellular phone.  Defendant also asked "Jake" to send photos of his penis and discussed meeting with him to perform sexual acts.  Given the ample untainted evidence in this case, the admission of the unredacted photographs was not likely to have affected the outcome of the proceedings against defendant, and any error in that regard was therefore harmless.  *Lukity*, 460 Mich at 496.

III.  OV 10

Defendant also argues that the trial court erred by assessing 15 points for OV 10.  We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence."  *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).  "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made."  *People v Blevins*, 314 Mich App 339, 348-349; 886 NW2d 456 (2016).  "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo."  *Hardy*, 494 Mich at 438.

OV 10 relates to the "exploitation of a vulnerable victim," and 15 points are properly assessed when "[p]redatory conduct was involved[.]" MCL 777.40(1)(a). "Predatory conduct" is defined as "preoffense conduct directed at a victim, or a law enforcement officer posing as a potential victim, for the primary purpose of victimization." MCL 777.40(3)(a). In other words, " '[p]redatory conduct' under the statute is behavior that precedes the offense, directed at a person for the primary purpose of causing that person to suffer from an injurious action or to be deceived." *People v Cannon*, 481 Mich 152, 161; 749 NW2d 257 (2008). To determine whether 15 points should be assigned to OV 10, the Michigan Supreme Court has set forth the following inquiries:

> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*Id*. at 162.]

"If the court can answer all these questions affirmatively, then it may properly assess 15 points for OV 10 because the offender engaged in predatory conduct under MCL 777.40." *Id*.

In this case, under the first *Cannon* prong, defendant engaged in a series of communications with "Jake" before he committed the offenses of asking "Jake" to send pictures of his penis. Under the second and third *Cannon* prongs, defendant's pre-offense communications were directed to a specific, underage victim, for the purpose of victimization. Defendant specifically asked if "Jake" would be alone when they met, and planned to "drive around" with him in defendant's car. He also engaged in conduct that may have led "Jake" to trust defendant and feel comfortable being alone with him. For example, defendant stated, "We would simply drive around talk see how it goes maybe make out a little and you give me oral." Defendant clearly engaged in preoffense "grooming" behavior to make it easier to victimize "Jake." See *People v Lampe*, 327 Mich App 104, 109; 933 NW2d 314 (2019). The trial court did not err by assessing 15 points for OV 10. *Cannon*, 481 Mich at 161.

## IV. CONSECUTIVE SENTENCES

Finally, defendant argues that the trial court abused its discretion by ordering that he serve his sentences consecutively. Specifically, defendant argues that the trial court should have been persuaded by several mitigating factors, including that: he had no prior felony convictions, he had never been charged with any kind of sexual offense, he had a longstanding history of gainful employment, and his character references had demonstrated that he was capable of rehabilitation. We disagree.

We review for an abuse of discretion a trial court's decision to impose consecutive sentences. *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016). An abuse of discretion exists if a trial court's decision falls outside the range of principled outcomes. *Feezel*, 486 Mich at 192.

-4-

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v DeLeon*, 317 Mich App 714, 721; 895 NW2d 577 (2016) (quotation marks and citations omitted). "[T]rial courts imposing one or more discretionary consecutive sentences are required to articulate on the record the reasons for each consecutive sentence imposed." *Norfleet*, 317 Mich App at 654.

In this case, the statutory authority for the imposition of consecutive sentences is MCL 752.797(4), which permits a trial court to order that a term of imprisonment imposed for unlawful use of a computer be served consecutively to a term of imprisonment for the underlying offense. At sentencing, the trial court provided a lengthy explanation as to why it was imposing consecutive sentences. The trial court noted that defendant had two misdemeanors in his history, but stated that defendant's criminal history was not a reason for imposing consecutive sentences. Instead, the trial court took "umbrage" with defendant's assertion that there was no "actual victim." The trial court stated, "The Court questions the likelihood of rehabilitation given your apparent position that you . . . are the victim, instead of the perpetrator." The trial court further stated that there were "a number of opportunities" in which defendant could have abandoned the crime, but that instead of "pressing the brakes," he "pressed the gas." The trial court noted that defendant had sent photographs of his penis and that defendant "knew that it was wrong" because he told "Jake" to "keep quiet" because of "Jake's" age. The trial court found that defendant "fully intended to commit a sexual act with a fourteen (14) year old boy" and that the "only reason why it didn't happen" was because "Jake" was "actually an undercover Trooper with the Michigan State Police."

Although defendant's lack of an extensive criminal history and his history of steady employment might demonstrate that defendant has shown responsibility in some areas of his life, defendant failed to take responsibility for his actions in this case. Further, although defendant argues that "the conversation between [defendant] and Jake simply ended" with no plans to meet in person, the record shows that on May 16, 2018, defendant and "Jake" had an extensive discussion about meeting the following weekend. Although defendant expressed some brief hesitancy about "going through with it" during that conversation, the trial court did not clearly err by inferring that defendant would have attempted to meet "Jake" and commit a sexual act, had "Jake" been an actual 14-year old child. The trial court considered defendant's background and the nature of the offenses and concluded that a consecutive sentence was warranted in light of the fact that defendant did not abandon the crime and would have committed a sexual act with a minor had "Jake" not been Trooper Zapolski. *Id*. It did not abuse its discretion by doing so. *Norfleet*, 317 Mich App at 664.

Affirmed.

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Michelle M. Rick