*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TYLER JAMEIL PAGEL,

Defendant-Appellant.

UNPUBLISHED
October 16, 2025
1:38 PM

No. 372559
Genesee Circuit Court
LC No. 2017-042369-FC

Before: SWARTZLE, P.J., and ACKERMAN and TREBILCOCK, JJ.

PER CURIAM.

This case returns to us following a second remand for resentencing. A jury convicted defendant of first-degree home invasion, MCL 750.110a(2), conspiracy to commit first-degree home invasion, MCL 750.157a, and armed robbery, MCL 750.529, and acquitted him of first-degree felony murder, MCL 750.316(1)(b), assault with intent to rob while armed, MCL 750.89, and five counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. In prior appeals, we vacated both the original sentence and the sentence imposed after the first remand because the trial court impermissibly considered acquitted conduct.

In this appeal, defendant challenges the scoring of the sentencing guidelines, asserting that the trial court again improperly relied on acquitted conduct. He also contends that the court failed to articulate particularized reasons for imposing a consecutive sentence and that his within-guidelines sentences are disproportionate. We agree that the trial court inadequately identified the factual basis supporting its guidelines calculation for the first-degree home invasion and conspiracy to commit first-degree home invasion convictions. Accordingly, we vacate those sentences and, as a result, need not address whether the trial court failed to provide particularized reasons for imposing them consecutively to the armed-robbery sentence. With respect to the armed-robbery conviction, we conclude that defendant has not overcome the presumption that his within-guidelines sentence is proportionate. We therefore affirm defendant's sentence for armed robbery, vacate his sentences for first-degree home invasion and conspiracy to commit first-degree home invasion, and remand for resentencing consistent with this opinion.

-1-

## I. BACKGROUND

This case arises from a home invasion committed by defendant, Dreshavon Jones, Jordan Alexander, Zicary Carpenter, and Joshua Eubanks. In a prior appeal, a panel of this Court summarized the relevant facts as follows:

Defendants' convictions arise from a home invasion at the home of Albert and Janice Ballard in Flint during the early morning hours of July 11, 2017. Janice was physically assaulted and Albert was shot and killed during the offense. The prosecutor's theory at trial was that all four defendants, and a fifth person, Dreshavon Jones, planned and participated in the home invasion. Jones pleaded guilty to several charges pursuant to a plea agreement that required him to testify truthfully at defendants' trial. According to Jones, he and the other defendants committed a home invasion at a different home, belonging to Austin Papkey, earlier in the night and then targeted the Ballard home. Evidence of the Papkey home invasion was introduced at defendants' trial. Jones testified that when the group entered the Ballard home, Carpenter gave him a .40-caliber firearm, which Carpenter said was not loaded, and Alexander was holding a nine-millimeter firearm and wearing a red hooded sweatshirt.

Janice Ballard testified that she awoke to find an intruder wearing a red hooded sweatshirt inside her bedroom. The intruder demanded to know where she kept her money. When Janice did not immediately respond, the intruder hit her. Albert was downstairs, where he had apparently fallen asleep while watching television. According to Janice, Albert owned a .45-caliber firearm that he kept in one of the kitchen cupboards. While Janie was upstairs in her bedroom, she heard voices coming from downstairs saying, "he's got a gun." The intruder in Janice's room then left the room and Janice heard an exchange of gunfire coming from downstairs. She then saw Albert coming up the stairs holding his firearm, followed by the sound of breaking glass, and then additional gunfire. Albert was shot during the offense and died from his injuries.

Jones testified that after the shooting erupted, he, Alexander, and Eubanks all jumped out a bedroom window to escape from the house and then fled on foot, climbing a fence and discarding some clothing and other items along the way. Shortly after the offense, Carpenter and Pagel were involved in a car accident at an intersection approximately half a mile from the crime scene when their car, which was being driven without headlights, collided with another vehicle. When the police responded to the accident scene, Carpenter and Pagel were still present and the police discovered that Carpenter had a gunshot wound. A wallet belonging to Austin Papkey, the victim of the earlier home invasion that night, was found in Carpenter's clothing. Nine-millimeter ammunition, with hollow points, was found inside the car. The car was registered to Alexander, whose identification was also found inside the car.

The police recovered video footage capturing Alexander, Eubanks, and Jones at different locations near the crime scene shortly after the offense. The

prosecution also presented evidence that on the morning after the offense, Alexander, Eubanks, and Jones made statements to various individuals implicating themselves and others in the offense. Evidence of cell phone mapping technology also placed defendants near the crime scene at the time of the offense. In addition, several items associated with the crime were submitted for DNA testing, and DNA consistent with each defendant's DNA profile was found on different items. In particular, a red shirt found in an alley close to the Ballard home contained DNA consistent with Alexander's DNA profile, and a black hoodie found in some bushes near the Ballard home contained DNA consistent with Eubanks's DNA profile.

The police did not recover any weapons other than Albert's .45-caliber firearm that was found at the scene, but the police recovered both spent and live ammunition from the Ballard home that was consistent with two different weapons—a nine-millimeter firearm and Albert's .45-caliber firearm. Bullet fragments recovered from Albert's body contained hollow points that were consistent with the nine-millimeter ammunition found in the car that Carpenter and Pagel were driving at the time of their accident. The police found a receipt inside the car that indicated that the ammunition was purchased from a Dunham's store on July 1, 2017. The police obtained video footage from the Dunham's store that showed Carpenter and Alexander purchasing the ammunition.

All four defendants were charged with first-degree felony murder, first-degree home invasion, conspiracy to commit first-degree home invasion, armed robbery, assault with intent to rob while armed, and several counts of felony-firearm. The jury found Alexander guilty of all counts as charged. The jury acquitted Carpenter of felony-murder and assault with intent to rob while armed, as well as the felony-firearm counts associated with those offenses, but found him guilty of first-degree home invasion, conspiracy to commit first-degree home invasion, armed robbery, and the felony-firearm charges associated with those three counts. The jury found defendants Eubanks and Pagel guilty of first-degree home invasion and conspiracy to commit first-degree home invasion, and also found Pagel guilty of armed robbery, but acquitted those defendants of all other charges, including all counts of felony-firearm. [*People v Alexander et al.*, unpublished per curiam opinion of the Court of Appeals, issued March 11, 2021 (Docket Nos. 349053, 349055, 349056, & 349158), pp 3-4.]

The trial court originally sentenced defendant to 140 to 240 months' imprisonment for his home-invasion and conspiracy convictions and 300 to 700 months for his armed-robbery conviction, with each sentence to be served consecutively. *Id*. at 3. Defendant appealed as of right, arguing in relevant part that the trial court impermissibly considered acquitted conduct in violation of *People v Beck*, 504 Mich 605, 609; 969 NW2d 213 (2019). Because the record was unclear as to whether the trial court had relied on acquitted conduct, this Court remanded to "allow[] the trial court to revisit its guidelines scoring and its ultimate sentencing decisions in light of *Beck*." *Alexander*, unpub op at 35. We also directed the trial court to reconsider its decision to impose multiple consecutive sentences in light of *People v Norfleet*, 317 Mich App 649, 666; 849 NW2d 195 (2016). *Alexander*, unpub op at 35.

On remand, the trial court imposed the same terms of imprisonment but ordered the armed-robbery and conspiracy sentences be served concurrently with each other and consecutively to the home-invasion sentence. *People v Pagel*, unpublished per curiam opinion of the Court of Appeals, issued June 15, 2023 (Docket No. 361165), pp 1-2. Defendant again appealed, challenging the scoring of various offense variables, and a panel of this Court held that the trial court impermissibly considered acquitted conduct when scoring the guidelines. *Id*. at 7. We remanded for reconsideration of Offense Variable (OV) 1 in light of *People v Brown*, 339 Mich App 411; 984 NW2d 486 (2021). *Pagel*, unpub op at 8. Because the judgment of sentence entered after resentencing was unclear regarding the consecutive or concurrent nature of the sentences, we also directed the trial court to "clarify . . . which sentence (or sentences) it wishes to designate as consecutive, the source of its statutory authority for doing so, and its reasoning in support of its decision." *Id*. at 10.

On second remand, the trial court resentenced defendant to 95 to 240 months' imprisonment for his home-invasion and conspiracy convictions and 180 to 300 months for his armed-robbery conviction. It ordered the home invasion and armed robbery sentences to run concurrently with each other but consecutively to the conspiracy sentence. This appeal followed.

## II. DISCUSSION

### A. OV 1

Defendant first challenges the trial court's assessment of 15 points for OV 1. We review for clear error the factual basis underlying a trial court's assessment of offense variables and review de novo "whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v Teike*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 363705); slip op at 2 (citation omitted). "Clear error exists when this Court is left with a definite and firm conviction that a mistake was made." *Id*. (quotation marks and citation omitted).

Because due process requires that a defendant be sentenced only on the basis of accurate information, "a sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). When determining a sentence, "[t]he court must score and consider the sentencing guidelines and assess the highest number of points properly applicable for each offense variable." *People v Muniz*, 343 Mich App 437, 452; 997 NW2d 325 (2022). "The sentencing offense determines which offense variables are to be scored in the first place, and then the appropriate offense variables are generally to be scored on the basis of the sentencing offense." *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008). While the trial court has discretion to determine the number of points to be scored, its findings must be supported by adequate record evidence, and its "factual determinations regarding offense variables must be supported by a preponderance of the evidence." *Muniz*, 343 Mich App at 452.

OV 1 addresses aggravated use of a weapon. MCL 777.31. As relevant here, 25 points must be assessed if "[a] firearm was discharged at or toward a human being"; 15 points if "[a] firearm was pointed at or toward a victim"; five points if "[a] weapon was displayed or implied"; and zero points if "[n]o aggravated use of a weapon occurred." MCL 777.31(1)(a)-(f). Because "OV 1 is an offense-specific variable," a sentencing court is limited to "considering the sentencing

offense alone" when scoring that variable. *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014) (quotation marks and citation omitted).

In the appeal arising from defendant's first resentencing, we explained that under *Beck*, "the trial court was prohibited from holding defendant criminally responsible for [Albert] Ballard's death '*in any way*, including at sentencing.' " *Pagel*, unpub op at 7, quoting *Brown*, 339 Mich App at 427. We noted, however, that this Court in *Brown* refined *Beck*'s "categorical" prohibition on considering acquitted conduct at sentencing by adopting a "rational jury" standard to determine which facts were actually disputed at trial. *Pagel*, unpub op at 6; see also *Brown*, 339 Mich App at 423. Under that standard,

> the sentencing court could consider facts and circumstances that were not, in a practical sense, put in dispute at trial, as long as those facts and circumstances were otherwise consistent with the jury's acquittal on a particular charge. Moreover, if a specific fact or circumstance was relevant to both the acquitted charge and the convicted charge—i.e., if there was an overlap of relevant conduct—then the trial court could consider that fact or circumstance when sentencing on the convicted charge. [*Brown*, 339 Mich App at 425.]

Applying *Brown* to the trial court's assessment of 25 points for OV 1, we "acknowledge[d] that defendant was acquitted of five counts of felony-firearm, which could support the conclusion that OV 1 would have been correctly assessed at zero points." *Pagel*, unpub op at 7. Nevertheless, because first-degree home invasion "may require proof that a person is armed with a dangerous weapon," we remanded for the trial court to "reconsider its assessment of points under OV 1 in light of this Court's decision in *Brown*." *Pagel*, unpub op at 8. We specifically directed the trial court on remand "to discern 'if a specific fact or circumstance was relevant to both the acquitted charge and the convicted charge—i.e., if there was an overlap of relevant conduct—[such that] the trial court could consider that fact or circumstance when sentencing on the convicted charge.' " *Id.* quoting *Brown*, 339 Mich App at 425 (alteration in original).

At the second resentencing, the trial court assessed 15 points for OV 1 as to the home-invasion and conspiracy convictions. The court explained:

> [T]he Court in applying the analysis offered in *People v Brown*, 339 Mich App 411, which was cited by the Michigan Court of Appeals in Mr. Pagel's case, and I'm looking at—and this is quote, if a specific fact or circumstance was relevant to both the acquitted charge and the convicted charge[,] i.e.[,] if there was an overlap of relevant conduct then the trial court can consider the fact or circumstance when sentencing on the convicted charged, close quote, and that's *Brown* at 425.

> In applying this analysis, and my familiarity with this case, as we had indicated it doesn't—it's inapplicable to the armed robbery. And this defendant—there is no record evidence that would support him having a weapon.

> But, as it relates to the home invasion, I believe my reading [of] *Brown* is that it does carve out an exception to *Beck* in limited circumstances.

And, no, points cannot be scored for a death, but because of the overlap and the relevant conduct, in looking at the elements of the offense of first[-]degree home invasion as well as conspiracy to commit that, I am satisfied that they meet the requirement or the elements for scoring OV 1 at 15.

Those findings fall short of our directive to identify whether a *specific fact or circumstance* was relevant to both the acquitted and convicted charges such that the fact or circumstance could properly support points for OV 1. Although the court acknowledged that it could not rely on Albert Ballard's death under *Beck* and appeared to apply *Brown* in concluding that "the overlap and the relevant conduct" supported an assessment of 15 points, it failed to articulate what specific overlapping conduct justified that assessment. Given our previous holding that "defendant simply cannot be held criminally responsible for [Albert's] death in any way, including at sentencing," *Pagel*, unpub op at 7 n 3 (citation omitted), and the court's own finding that no record evidence established that defendant possessed a weapon, we cannot discern the factual basis for the 15-point score.

We therefore again vacate defendant's home-invasion and conspiracy sentences and remand for further findings as to OV 1. In so doing, we reiterate the directive stated in our prior opinion:

> Specifically, we direct the trial court, as set forth in *Brown*, 339 Mich App at 425, to discern "if a *specific fact or circumstance* was relevant to both the acquitted charge and the convicted charge—i.e., if there was an overlap of relevant conduct—[such that] the trial court could consider that fact or circumstance when sentencing on the convicted charge." [*Pagel*, unpub op at 8 (alteration in original; emphasis added).]

## B. CONSECUTIVE SENTENCE

Defendant next contends that the trial court failed to articulate particularized reasons supporting its imposition of a consecutive sentence. Because we are vacating the home-invasion and conspiracy convictions, we need not reach this issue.

We note, however, that the record again reflects ambiguity regarding the trial court's intent as to consecutive sentencing. At the second resentencing, the trial court orally indicated that the conspiracy sentence would be served consecutively to the home-invasion and armed-robbery sentences, which would be served concurrently with each other. But on the judgment of sentence entered after resentencing, the court checked a box indicating that all three sentences were to be served consecutively to one another. That inconsistency leaves the intended sentencing structure unclear. Accordingly, we reiterate our prior instruction:

> [O]n remand, if the trial court wishes to impose a consecutive sentence or sentences, it should clarify (and the Judgment of Sentence should reflect) which sentence (or sentences) it wishes to designate as consecutive, the source of its statutory authority for doing so, and its reasoning in support of its decision. [*Pagel*, unpub op at 10.]

## C. PROPORTIONALITY

Defendant finally asserts that his within-guidelines sentence for armed robbery violates the principle of proportionality.[1] We review challenges to the proportionality of a sentence for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). "A trial court abuses its discretion if the imposed sentence is not 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 7, quoting *Steanhouse*, 500 Mich at 459-460.

Although the sentencing guidelines are advisory, "they remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). Trial courts must consult the guidelines when imposing a sentence. *Id*. "[A] judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing." *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990), abrogation in part on other grounds recognized by *Steanhouse*, 500 Mich at 477. Under the sentencing guidelines, the court is required to score both offense and prior record variables to determine the appropriate sentence range. *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Offense variables reflect the nature and severity of the sentencing offense, while prior record variables reflect the defendant's criminal history. *Id*. at 263-264. "Therefore, the appropriate sentence range is determined by reference to the principle of proportionality; it is a function of the seriousness of the crime and of the defendant's criminal history." *Id*. at 264.

In making a proportionality assessment, a trial court must consider the nature of the offense and the background of the offender. *Milbourn*, 435 Mich at 651. Courts may consider a variety of factors, including:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (citation omitted).]

Under the principle of proportionality, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017) (citation omitted).

Here, defendant's minimum sentence of 180 to 300 months for armed robbery falls within the applicable guidelines range of 135 to 225 months. "When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is

---

[1] Defendant also challenges the proportionality of his home-invasion and conspiracy sentences. Because we vacate and remand those sentences, we need not address their proportionality.

proportionate." *Ventour*, ___ Mich App at ___; slip op at 7 (citation omitted). Defendant's sentence is therefore presumptively proportionate, and he "bears the burden of demonstrating that his within-guidelines sentence is unreasonable" by "presenting unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id*. at ___; slip op at 7-8 (cleaned up).

Defendant has not met that burden. He identifies no unusual circumstances rebutting the proportionality presumption. Instead, he asserts that his sentence is disproportionate because he has no prior criminal history, was acquitted of the murder and felony-firearm counts, expressed remorse, obtained his GED, and attended Alcoholics Anonymous and Narcotics Anonymous meetings. Those contentions are unavailing. Defendant's lack of criminal history was accounted for in the scoring of the prior record variables. He does not argue that the trial court considered acquitted conduct when scoring the guidelines for the armed-robbery conviction, nor does he explain how his acquittals render his within-guidelines sentence disproportionate. Moreover, the trial court explicitly considered his remorse, educational achievement, and participation in recovery programs when imposing his sentence.

Defendant, who was 17 at the time of the offenses, additionally contends that his sentence is disproportionate because the trial court failed to consider his youth and its attendant circumstances as mitigating factors at sentencing. He relies on *People v Eads*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 357332); slip op at 1-2, in which this Court held that the defendant's sentence was disproportionate because the trial court did not consider his youth as a mitigating factor. That reliance is misplaced. The defendant in *Eads* was convicted of second-degree murder and felony-firearm for a shooting he committed when he was 16 years old, and the sentence at issue was an upward departure from the guidelines minimum range. *Id*. at ___; slip op at 2-3. By contrast, the sentence imposed here falls within the guidelines recommended range, and defendant identifies no authority holding that youth, standing alone, constitutes an unusual circumstance sufficient to overcome the presumption of proportionality. Indeed, in *People v Piotrowski*, 211 Mich App 527, 532-533; 536 NW2d 293 (1995), we held that the age of the defendant—17 at the time of the offense—did not amount to such a circumstance.

Furthermore, the record here demonstrates that the trial court considered defendant's youth a mitigating factor and balanced it, along with his lack of criminal history and accomplishments while incarcerated, against the seriousness of the crime and its impact on the victims and the community. On this record, defendant has not overcome the presumption that his within-guidelines sentence is proportionate.

### III. CONCLUSION

We affirm defendant's sentence for armed robbery but vacate his sentences for first-degree home invasion and conspiracy to commit first-degree home invasion. We remand to the trial court for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman
/s/ Christopher M. Trebilcock