*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SAMUEL JENKINS,

        Defendant-Appellant.

UNPUBLISHED
June 15, 2023

No. 359341
Genesee Circuit Court
LC No. 18-044196-FC

Before: RIORDAN, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of torture, MCL 750.85, and a related conviction of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1); first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1) (multiple variables); assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a); assault with a dangerous weapon, MCL 750.82(1), and a related conviction of felony-firearm; attempted assault of a pregnant individual with the intent to cause miscarriage or stillbirth, MCL 750.90a(a); MCL 750.92; carrying a concealed weapon (CCW), MCL 750.227(2); aggravated domestic violence, MCL 750.81a(2); and knowingly assaulting a pregnant individual, MCL 750.81(3). The trial court sentenced defendant to prison terms of 356 to 855 months for his convictions of torture and CSC-I; 2 years imprisonment for each conviction of felony-firearm; and one year in jail for the convictions of aggravated domestic violence and knowingly assaulting a pregnant individual. The trial court also sentenced defendant as a second-offense habitual offender, MCL 769.10, to prison terms of 6 months to 10 years for his conviction of assault with intent to do great bodily harm; 3 months to 4 years for his conviction of assault with a dangerous weapon; 35 to 105 months for his conviction of attempted assault of a pregnant individual with the intent to cause miscarriage or stillbirth; and 3 months to 5 years for his conviction of CCW. The trial court ordered that defendant's sentences for his CSC-I conviction and his two felony-firearm convictions be served prior to his other sentences. We affirm, but remand to the trial court for ministerial correction of defendant's judgment of sentence.

-1-

# I. FACTUAL BACKGROUND

Defendant and BP had a dating relationship and a child in common. When their first child was about one year old, BP became pregnant again. BP testified that, shortly after she found out that she was pregnant, she and defendant had a heated argument, after which she told defendant that she would have an abortion. BP did not do so.

When BP was about 27 weeks pregnant, defendant again asked BP whether she was pregnant. BP ultimately admitted that she was pregnant. Defendant began hitting her, pointed a gun at her, and told BP that he would kill her. BP testified that she was covering her stomach, so defendant instead hit her body. Defendant also yelled at BP and set her work vest on fire. Defendant testified and denied engaging in most of the behaviors to which BP had testified, but he admitted that he pushed BP in the chest and hit her in the arm and leg areas. He also denied that he ever targeted BP's stomach with his attacks. BP testified that, in order to get defendant to stop hitting her, she agreed to research ways to terminate her pregnancy.

According to BP, she did not feel comfortable leaving defendant, because she did not have a car and defendant had threatened to take their child. A few days later, defendant again confronted BP about her pregnancy. BP testified that she did not feel comfortable calling the police because she previously had a bad experience with the judicial system. Instead, she set her phone to record audio and placed it on the couch next to her. This recording was played for the jury.

On the recording, over the course of more than two hours, BP sobbed, cried, wept, or sniffled.[1] After audible thuds, BP could be heard screaming and then sobbing again. BP repeatedly pleaded with defendant not to try to harm her unborn child. Defendant told BP that, if she had the baby, he would snap its neck, and he threatened to make the next 12 hours of BP's life miserable if she decided to do it "the hard way." Defendant threatened to shoot BP more than once, asked BP whether he should just kill her, asked BP whether he should inject her with diseased blood, and told her that her crying was making him want to kill her. Defendant threatened to cut BP open; threatened to choke her to unconsciousness and punch her stomach; asked BP whether she would like him to get a wooden pole, a barbell, or a weight to hit her stomach with; and asked whether he should use a steel-toed boot, the stick, or his fist. In response to each of the threats, BP's sobbing audibly grew louder.

About 1 hour and 45 minutes into the recording, defendant began asking for oral sex. BP responded that she did not want to do that, and repeatedly asked whether, if she did, defendant would still harm her unborn child. When defendant responded that he still would, BP pleaded with him not to. While BP repeatedly stated that she was sorry and asked defendant not to hurt her, defendant responded over and over by asking whether BP would perform oral sex on him. On the

---

[1] We reiterate the details of the recording in brief, but, because they impact defendant's challenge to the scoring of Offense Variable 7 and the sufficiency of the evidence, in sufficient detail to support our conclusions regarding those issues. Suffice it to say, the full length of the recording is far more horrific than our dry summary can properly convey.

recording, it sounds as if BP is sobbing while oral sex is taking place. Defendant ultimately stated, "I'm still not happy but that just bought you a little time, a little extra time."

BP testified that, throughout the events, she was frightened, hurt, and "just felt a lot." She stated that she had not wanted to engage in sexual activity but had done so because she did not feel as if she had a choice. During his testimony, defendant denied forcing BP to have oral sex, stated that he did not have his gun with him at the time, and testified that he was not being serious when he had threatened to snap the baby's neck when it was born. Defendant agreed that BP had performed oral sex on him, but when asked whether she had been sobbing while doing so, he testified that there had been "some role playing."

The next day, BP went to work and her mother picked up the parties' child from the home. BP subsequently went to the hospital, where bruises were observed on her arms, hips, chest, and legs. Ultimately, BP's child was born healthy.

Defendant was convicted and sentenced as described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

First, defendant argues that the evidence was not sufficient to support his torture conviction because the record does not support that BP suffered severe mental pain or suffering. Defendant's argument is entirely without merit. The audio recording amply demonstrated BP's mental and emotional anguish while defendant assaulted and threatened her for more than two hours.

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970); *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). This Court reviews the evidence "in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt." *Id*.

As an initial matter, to the extent that defendant argues that the jury unduly focused on the audio recording, this argument lacks merit. This Court will not interfere with the trier of fact's role to determine the weight of the evidence. *Wolfe*, 440 Mich at 514-515. Regardless, on appeal, the evidence is viewed in the light most favorable to the prosecution. *Miller*, 326 Mich App at 735. Whatever weight the jury may have placed on the recording does not affect whether the evidence was sufficient to support defendant's conviction.

The record more than sufficiently established BP's severe mental pain and suffering. MCL 750.85 provides in pertinent part as follows:

> (1) A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony punishable by imprisonment for life or any term of years.

(2) As used in this section:

* * *

(d) "Severe mental pain or suffering" means *a mental injury that results in a substantial alteration of mental functioning that is manifested in a visibly demonstrable manner* caused by or resulting from any of the following:

(*i*) The intentional infliction or threatened infliction of great bodily injury.

(*ii*) The administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt the senses or the personality.

(*iii*) The threat of imminent death.

(*iv*) The threat that another person will imminently be subjected to death, great bodily injury, or the administration or application of mind-altering substances or other procedures calculated to disrupt the senses or personality.

(3) Proof that a victim suffered pain is not an element of the crime under this section. . . . [Emphasis added.]

A victim's crying, pleading, screaming, or begging to live is a visibly demonstrable manifestation of altered mental functioning sufficient to support a torture conviction. *People v Lymon*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 327355); slip op at 5-6, lv gtd ___ Mich ___, ___; 983 NW2d 82 (2023).

In this case, there was ample evidence that defendant threatened to kill BP and threatened to inflict death or a great bodily injury on her, and that those threats resulted in a mental injury that altered her mental functioning. It is difficult to overstate exactly how clear BP's distress is in the recording. BP's sobbing, weeping, and pleading can be heard throughout the recording and often increased in intensity in response to defendant's threats. Defendant's threats took place for more than two hours and stopped only after he committed sexual assault. The jury had ample evidence from which to conclude that the prosecution had established beyond a reasonable doubt that BP had suffered a mental injury and that defendant was guilty of torture, MCL 750.85.

### III. DOUBLE JEOPARDY

Defendant also argues that his convictions of both aggravated assault and aggravated domestic violence violated his rights under the Double Jeopardy Clauses of the United States and Michigan Constitutions. This argument lacks merit.

Generally, "[a] double jeopardy challenge presents a question of constitutional law that this Court reviews de novo." *People v Smith*, 478 Mich 292, 298; 733 NW2d 351 (2007). However, this Court reviews unpreserved issues for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings. *Id.*

-4-

Additionally, a criminal defendant must show actual innocence or that the error seriously affected the fairness of the proceedings. *Id*. at 763.

The Fifth Amendment of the United States Constitution protects a criminal defendant from being "twice put in jeopardy of life or limb . . . ." *People v Szalma*, 487 Mich 708, 715-716; 790 NW2d 662 (2010), quoting US Const, Am V (quotation marks omitted). The Michigan Constitution contains a parallel provision that this Court construes consistent with the federal provision. *Szalma*, 487 Mich at 716. See Const 1963, art 1, § 15. In part, this provision protects a criminal defendant against multiple punishments for the same offense. *People v Ream*, 481 Mich 223, 227; 750 NW2d 536 (2008). Generally, when a defendant's conduct violates two different statutes, this Court must determine whether the offenses have the same elements. *Id*. at 240. If each offense requires proof of a fact that the other does not, multiple convictions do not violate a defendant's right to be protected from double jeopardy. *Id*. at 227-228. However, the scope of double-jeopardy protections for the imposition of multiple punishments for the same offense is a question of legislative intent. *Smith*, 478 Mich at 312-313. Even if the crimes have the same elements, a legislature may authorize cumulative punishments. See *Ohio v Johnson*, 467 US 493, 499; 104 S Ct 2536; 81 L Ed 2d 425 (1984); *Smith*, 478 Mich at 313.

Defendant's argument does not address his actual convictions. None of the assaultive offenses of which defendant was actually convicted are the same offense for the purposes of double jeopardy. Defendant's analysis relies on a comparison of MCL 750.81a(1) and MCL 750.81a(2), but defendant was *not* convicted of assault under MCL 750.81a(1). Defendant was convicted of aggravated domestic violence under MCL 750.81a(2), but he was not convicted of aggravated assault under MCL 750.81a(1). Rather, he was convicted of assault with intent to do great bodily harm under MCL 750.84. That statute provides in pertinent part that "[t]his section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law arising out of the same conduct as the violation of this section." MCL 750.84(3). Because our Legislature has authorized cumulative punishments for assault with intent to do great bodily harm and other violations of law arising from the same conduct (including the remainder of defendant's assaultive convictions), defendant's double-jeopardy protections have not been violated.[2]

## IV. SENTENCING

### A. CONSECUTIVE SENTENCING

Defendant argues that the trial court did not provide a sufficient rationale for sentencing him to serve a consecutive term in prison for CSC-I. We conclude that the trial court's reason for imposing a consecutive sentence was sufficiently stated and did not fall outside the range of principled outcomes.

---

[2] Further, each of defendant's other assaultive convictions contains an element that the other does not. Aggravated domestic violence under MCL 750.81a(2) requires a domestic relationship, assault with a dangerous weapon under MCL 750.82(1) requires the use of one of the specified weapons, and knowingly assaulting a pregnant individual under MCL 750.81(3) has the additional element of a pregnant individual.

This Court reviews for an abuse of discretion a trial court's decision to impose a consecutive sentence. *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016). A trial court abuses its discretion when its decision falls outside the principled range of outcomes. *Id.* Consecutive sentences are permissible only when a statute specifically authorizes consecutive sentences. *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012). Concerning CSC-I convictions, MCL 750.520b(3) provides that "[t]he court may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." Criminal offenses arise from the same transaction when they have a causal connection that is more than incidental, such as when incidents occur in a continuous time sequence and spring from one another. *Ryan*, 295 Mich App at 403. The trial court must articulate its rationale for imposing a consecutive sentence to facilitate appellate review of its decision. *Norfleet*, 317 Mich App at 665.

In this case, the trial court reasoned that consecutive sentences were appropriate because the CSC occurred while the assault and torture were taking place as "a manipulation tactic that was used to play on the victim's desire to save her baby and to have the beating stop . . . ." The trial court found that this tactic rendered it "very compelling and appropriate" for the CSC-I sentence to be served consecutively to defendant's sentences for other offenses.

The record supports the trial court's decision. While BP was pleading and sobbing, defendant repeatedly asked her to perform oral sex on him. After BP began repeatedly pleading that she was sorry, the defendant began responding that, if she was sorry, she would perform oral sex on him. BP testified that she did so because of the way defendant was acting and because she did not want anything worse to happen. Following the sexual assault, defendant stated to BP that she had "bought [herself] a little extra time." The record supported the trial court's decision that the torture and sexual assault were part of a continuous sequence and that the torture was used to manipulate BP into submitting to the sexual assault. We conclude that the court's decision fell within the range of principled outcomes. *Norfleet*, 317 Mich App at 664.

## B. OFFENSE VARIABLE 7

Defendant argues that the trial court erred by assessing 50 points for offense variable (OV) 7, when his conduct did not substantially increase the fear and anxiety that the victim suffered. We disagree. Defendant's argument overlooks the word "or" in OV 7, which allows the trial court to assess 50 points when the victim was tortured *or* subjected to substantially increased fear and anxiety.

We note that defendant did not preserve this issue by raising it before the trial court. To preserve a sentencing issue for appeal, the defendant must raise it at sentencing, in a motion for resentencing, or in a motion to remand. *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016). Generally, this Court reviews de novo whether the facts found by the trial court are sufficient to satisfy the scoring conditions of a statute. *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018). However, this Court reviews unpreserved issues for plain error. *Id.*

According to MCL 777.37(1), the trial court should score aggravated physical abuse under OV 7 if the following circumstances apply:

(a) A victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ……………………………………………………………... 50 points

(b) No victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ……………………………………………………………. 0 points

OV 7 concerns "four categories of conduct." *People v Hardy*, 494 Mich 430, 440-441; 835 NW2d 340 (2013). The word "or" in OV 7 is a disjunctive term that indicates separate alternatives. *Id*. at 441. Unless expressly prohibited, the sentencing guidelines allow the trial court to consider factors that are also the elements of the sentencing offense when scoring OVs. *Id*. at 442.

In this case, the trial court properly assessed 50 points under MCL 777.37(1)(a) because defendant tortured BP as an inherent part of his torture offense, and as previously discussed, his CSC-I offense was part of the same transaction. The court did not need to find that he also engaged in conduct that substantially increased the victim's fear and anxiety.[3]

## C. SENTENCING ERROR

The prosecution notes that the trial court erroneously sentenced defendant to serve one year in prison for his conviction of knowingly assaulting a pregnant individual. The statutory maximum for that conviction is 93 days in jail. When the prosecutor acknowledges that a judgment of sentence contains a mistake that must be corrected, this Court will remand to allow the trial court to correct the error. *People v Katt*, 248 Mich App 282, 312; 639 NW2d 815 (2001), aff'd 466 Mich 889 (2002). Correcting a statutorily invalid maximum sentence is a ministerial act because it is outside the discretion of the trial court. *People v Maxson*, 163 Mich App 467, 471; 415 NW2d 247 (1987). MCL 750.81(3) provides that "[a]n individual who assaults or assaults and batters an individual who is pregnant and who knows the individual is pregnant is guilty of a misdemeanor punishable by imprisonment for not more than 93 days . . . ." Because defendant was sentenced to serve one year in prison for this offense, we remand for ministerial correction to defendant's judgment of sentence to comply with the statutory maximum sentence for this offense.

---

[3] Additionally, although the trial court did not make such a finding, the record more than supports that defendant treated BP with sadism. MCL 777.37(a)(3) defines "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." Here, the recording clearly establishes that BP suffered prolonged pain and humiliation, and that defendant inflicted this pain and humiliation for his own gratification, sexual or otherwise. In fact, defendant frequently reacted to BP's distress with amusement, and played on BP's pain and fear for her life and the life of her unborn baby to convince her to accept his sexual assault.

We affirm but remand for the ministerial correction of defendant's judgment of sentence. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra