*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ISAAC NTABAAZI,

      Defendant-Appellant.

UNPUBLISHED
February 1, 2024

No. 362498
Berrien Circuit Court
LC No. 2021-016024-FC

Before: M. J. KELLY, P.J., and MARKEY and CAMERON, JJ.

PER CURIAM.

This appeal by right arises from a traffic stop that left a Michigan State Police Trooper partially paralyzed in one leg and left defendant, Isaac Ntabaazi, completely blind. A jury convicted defendant of careless, reckless, or negligent use of a firearm causing injury (CRNFCI), MCL 752.861, possession of a firearm by a felon (felon-in-possession), MCL 750.224f, carrying a concealed weapon (CCW), MCL 750.227, three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and resisting or obstructing an officer performing his duties causing serious impairment of a body function (R&O-CSI), MCL 750.81d(3). Defendant was sentenced to 16 to 24 months' imprisonment for the CRNFCI conviction, three to five years' imprisonment for the felon-in-possession and CCW convictions, two years' imprisonment for each of the felony-firearm convictions, and 100 to 180 months' imprisonment for the R&O-CSI conviction. The trial court, exercising its discretion, ordered that the R&O-CSI sentence run consecutively to the CRNFCI, felon-in-possession, and CCW sentences. On appeal, defendant argues that the evidence was insufficient to support the R&O-CSI conviction, that his attorney provided ineffective assistance with respect to the jury instructions regarding the R&O-CSI charge, and that there were several sentencing errors that entitle him to resentencing. We affirm defendant's convictions and the individual sentences for each crime, but we vacate the "consecutive sentencing" aspect of the judgment of sentence and remand the case to the trial court so that it can more fully articulate its rationale for imposing consecutive sentences.

## I. BACKGROUND

Video footage from the patrol car of Michigan State Police Trooper Jason DeVries shows that on October 6, 2021, at about 10:00 p.m., Trooper DeVries was patrolling in Niles, Michigan, when he saw a vehicle fail to completely stop at a stop sign. Trooper DeVries activated his emergency overhead lights and made a traffic stop. After running the license plate through the Law Enforcement Information Network, the trooper discovered the name of the registered owner, that the car was uninsured, and that the registered owner's license was suspended. Having decided to detain the driver, Trooper DeVries returned to the vehicle, asked the driver if he were the registered owner, informed the driver that his license was suspended, asked him to step out of the car, and placed the driver in handcuffs. The trooper then asked the driver if he would consent to a search of his person, and the driver consented. Trooper DeVries patted down the outside of the driver's clothes for weapons and found none. After the driver declined to consent to a search of his car, Trooper DeVries informed him that he would have to conduct an inventory search before having the vehicle towed. The trooper then asked defendant, the car's front-seat passenger, to get out of the vehicle.[1] Trooper DeVries opened the car door for defendant. As defendant was exiting the car, Trooper DeVries asked: "Do you have anything on you that's going to poke me, stick me, or hurt me if I pat you down for officer safety? Is that okay?" When he got out of the car, defendant turned in the direction of the trooper and reached toward the pocket of his hoodie and waistband of his pants. Trooper DeVries grabbed defendant's wrists and ordered him not to reach for anything. While the trooper was holding defendant's wrists, defendant ripped his right arm free and appeared to reach for something on his person as Trooper DeVries demanded to know what he was reaching for in his clothing. Trooper DeVries tried to push defendant's hands down against his body, but defendant backpedaled and attempted to free them.

According to the trooper's testimony at trial, as he and defendant continued to fight over defendant's hands, Trooper DeVries looked down and saw a black object in defendant's hand that the trooper believed to be a gun. At that moment, Trooper DeVries heard a loud gunshot, saw a muzzle flash coming from defendant's hand, and felt a searing pain on the inside of his leg in the groin area. Despite being shot, Trooper DeVries tackled defendant, pinned him on the ground, drew his service weapon, and shot defendant twice in the temple. The bullet that hit Trooper DeVries severed his sciatic nerve and left him paralyzed in his right leg from the knee down. The two shots to defendant's temple left him immediately and completely blind.

Defendant was arrested and bound over on the offenses for which he was convicted, plus a charge of assault with intent to commit murder. At trial, defendant testified that when the driver pulled over in response to the trooper's emergency lights, he saw the driver grab a gun from the pocket in the driver's door and put it under the driver's seat. Upon that observation, defendant became nervous and panicked. He retrieved the gun from under the driver's seat and put it in the pocket of his hoodie. Defendant was sitting in the car with his hands in the pocket of his hoodie when the trooper returned to the car. Defendant did not recall the trooper asking him to step out of the car, and he was not sure who opened the door. But defendant thought that he must have done so because defendant took his hands out of his hoodie for some purpose. Defendant claimed

---

[1] There were no other passengers in the car.

that he immediately stepped out of the car. According to defendant, although his movements were nervous and shaky, they were not aggressive.

Defendant testified that as soon as he stepped out of the car, he started pulling up his pants, but the trooper mistakenly thought that he was reaching for something in his jeans. Defendant told the trooper that he did not have anything, and he put his hands back in his hoodie. Defendant did not expect to be searched, nor did he want to be searched, and he could not recall whether the trooper asked if he could conduct a search. The trooper grabbed his wrists; however, defendant wanted to keep his hands in his hoodie. Defendant stated that he did not remember breaking free from the trooper's grip, and he insisted that he never pulled away from the trooper. They both went backward and fell, causing defendant's hands to be pulled out of his hoodie, at which point the gun discharged. Defendant testified that as soon as the shot when off, the trooper rushed him, grabbed him around the neck with one hand, and used his other hand to shoot defendant in the head with the trooper's service revolver. Defendant maintained that he never tried to hurt, shoot, or kill the trooper. He remembered his hand being on the gun in his hoodie, but defendant claimed that he did not have his finger on the trigger and that the gun just went off accidentally.

The jury did not find defendant guilty of assault with intent to commit murder or the lesser charge of assault to do great bodily harm less than murder. The jury did find defendant guilty of the lesser charge of CRNFCI, along the offenses of felon-in-possession, CCW, R&O-CSI, and three counts of felony-firearm. Defendant was sentenced as indicated earlier, including the sentence of 100 to 180 months' imprisonment for the R&O-CSI offense. That sentence is to be served consecutively to his sentences for the CRNFCI, CCW, and felon-in-possession convictions, which was a discretionary decision made by the trial court. Of course, the felony-firearm sentences are to be served consecutively with and preceding the other sentences as mandated by MCL 750.227b(3). Defendant now appeals.

## II. ANALYSIS

## A. SUFFICIENCY OF THE EVIDENCE

Defendant first contends that the evidence was insufficient to support the R&O-CSI conviction. We disagree. In *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020), this Court articulated the well-established principles that govern our review of a sufficiency argument:

> This Court reviews de novo whether there was sufficient evidence to support a conviction. In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the

face of whatever contradictory evidence is provided by the defendant. All conflicts in the evidence must be resolved in favor of the prosecution. [Quotation marks and citations omitted.]

To convict defendant of R&O-CSI, the prosecutor had to prove beyond a reasonable doubt: (1) that defendant assaulted, battered, wounded, resisted, or obstructed Trooper DeVries; (2) that defendant knew or had reason to know that Trooper DeVries was performing his duties as an officer; (3) that Trooper DeVries gave defendant a lawful command or was otherwise performing a lawful act; and (4) that in assaulting, battering, wounding, resisting, or obstructing Trooper DeVries, defendant caused the trooper to suffer a serious impairment of a body function. MCL 750.81d(1) and (3); M Crim JI 13.1.

There is no dispute that defendant resisted Trooper DeVries, that defendant knew at the time that Trooper DeVries was a police officer performing his duties, and that defendant's act caused the trooper to suffer a serious impairment of a body function, i.e., paralysis of his right leg below the knee. At issue is whether the evidence was sufficient to establish the third element of R&O-CSI beyond a reasonable doubt, i.e., that Trooper DeVries was acting lawfully. Defendant contends that the trooper engaged in an unlawful *Terry*[2] frisk; therefore, defendant had the right to offer reasonable resistance. See *People v Moreno*, 491 Mich 38, 41, 51-52; 814 NW2d 624 (2012) (holding that MCL 750.81d did not abrogate a person's common-law right to resist or obstruct an officer in response to the officer's giving an unlawful command or acting unlawfully). Defendant therefore asserts that his conviction of R&O-CSI and the associated felony-firearm conviction should be vacated.

Neither the trial testimony nor the video recording of the traffic stop supports defendant's assertion that Trooper DeVries conducted a *Terry* frisk of defendant. Trooper DeVries sought defendant's consent to a pat-down by following the same procedure with defendant that he had employed when he secured the driver's consent to a pat-down. He asked defendant if he had anything that would poke or stick him if he performed a pat-down, and the trooper then asked defendant, "Is that okay?" The video depicts that while the trooper was still asking if it was "okay" to conduct a pat-down, defendant reached for his waist and the pocket of his hoodie, causing Trooper DeVries to respond immediately by tugging defendant's arm, grabbing his wrists, and telling him not to reach for anything. Defendant did not answer the trooper's request for consent to a pat-down. Instead, defendant's movements compelled Trooper DeVries to abandon the request and grab defendant's wrists. Trooper DeVries *did not* pat down defendant.

Defendant suggests that the trooper's request for consent was illusory because the trooper had already taken physical control of defendant by putting his hand on defendant's arm. We disagree with this interpretation of the evidence. The video footage shows that Trooper DeVries put his hand on defendant's arm as defendant was completing the process of exiting the car and that the trooper did so for the limited purpose of getting defendant to listen and respond to the trooper's questions. Trooper DeVries appeared to guide defendant rather than to exercise physical control over him; the trooper's hand on defendant's arm certainly did not prevent defendant from reaching for his hoodie pocket and his waist area. Once defendant reached for his pocket and

---

[2] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

waistline, it was objectively reasonable for Trooper DeVries to grab defendant's wrists to protect himself from a potential threat. See *Graham v Connor*, 490 US 386, 395-397; 109 S Ct 1865; 104 L Ed 2d 443 (1989) (holding that an officer's use of force at an investigatory stop should be analyzed under an objectively-reasonable standard).

Viewed in a light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime of R&O-CSI were proven beyond a reasonable doubt. The record does not support defendant's argument that Trooper DeVries performed a *Terry* pat-down, let alone an unlawful one. Because defendant has not established that the trooper acted unlawfully, he has not shown that he had a right to resist or obstruct the trooper's actions. Therefore, we conclude that defendant has failed to demonstrate that there was insufficient evidence to support the R&O-CSI conviction.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL – JURY INSTRUCTIONS

Defendant also contends that defense counsel was ineffective for failing to request a special instruction indicating that Trooper DeVries could only execute a pat-down if he had the necessary level of reasonable suspicion to justify a frisk. "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *Id*. As already explained, the record did not support such an instruction. Accordingly, defense counsel's failure to request a *Terry*-related instruction did not constitute ineffective assistance of counsel. See *People v Smith*, 336 Mich App 79, 104-105; 969 NW2d 548 (2021) (observing that defense counsel did not provide ineffective assistance by failing to request a lesser-included instruction that was not supported by a rational view of the evidence).

## C. SENTENCING ISSUES

Defendant raises several sentencing challenges. First, he contends that the trial court abused its discretion by ordering consecutive sentences without providing specific reasons for its decision. We agree.

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Baskerville*, 333 Mich App 276, 289; 963 NW2d 620 (2020) (quotation marks and citation omitted). With respect to the R&O-CSI statute, "[a] term of imprisonment imposed for a violation of this section may run consecutively to any term of imprisonment imposed for another violation arising from the same transaction." MCL 750.81d(6). A trial court imposing discretionary consecutive sentences is required to cite "particularized reasons," i.e., reasons specific to the offender and the offense, that justify the "strong medicine" of consecutive sentencing. *People v Norfleet (Norfleet I)*, 317 Mich App 649, 665-666; 897 NW2d 195 (2016). The purpose of requiring such reasoning is to facilitate appellate review and to ensure that consecutive sentencing is reserved for those situations in which so drastic a deviation from the norm is justified. *Id.* at 665. The Court ruled that "trial courts imposing one or more discretionary consecutive sentences are required to articulate on the record the reasons for each consecutive sentence imposed." *Id.* at 654.

In *Norfleet I*, this Court concluded that "the trial court spoke only in general terms, stating that it took into account [the] defendant's background, his history, [and] the nature of the offenses involved." *Id*. at 666 (quotation marks omitted; second alteration in original). Accordingly, the *Norfleet I* panel remanded the case to the trial court to "fully articulate" its reasoning for the imposition of consecutive sentences. *Id*. On remand, the trial court articulated its rationale for imposing consecutive sentences in the case:

> "And, as the prosecutor states in his brief, some of the considerations for consecutive sentencing are the defendant's extensive criminal history which we reviewed, his extremely violent criminal history which we reviewed, his failure to be rehabilitated, his failure to be gainfully employed, . . . his use and manipulation of addicts to sell heroin, his use and manipulation of his 18 year old girlfriend to sell heroin, the length and extensiveness of his heroin dealing, the amount of money he gained from his heroin dealing and the fact that consecutive sentences deter others from committing similar crimes." [*People v Norfleet*, 321 Mich App 68, 72; 908 NW2d 316 (2017) (*Norfleet II*) (ellipsis in original).]

In the second appeal, this Court held that the trial court's discussion of multiple detailed facts on remand "was sufficient to depart from the heavy presumption in favor of concurrent sentences and to order . . . the sentences to be served consecutively to another." *Id*. at 73.

At the sentencing hearing in the present case, the trial court imposed consecutive sentences on the following basis:

> Now, it is within the discretion of the Court on Count Eight, resisting and obstructing a peace officer, causing serious impairment of a body function [R&O-CSI], to sentence the Defendant consecutively. I so find that that that is reasonable, and appropriate, and proportionate in this case and I hereby sentence the Defendant to serve . . . a sentence of 100 months to 180 months, and again, this will be served consecutively to the sentences in original counts One, Two, and Three . . . .

As the foregoing quotation demonstrates, the trial court provided no elaboration for its decision to impose consecutive sentences, simply stating that the court found it "reasonable, and appropriate, and proportionate." These reasons were conclusory and lacked the rationale necessary for us to assess whether the court's decision to impose consecutive sentences fell within the range of reasonable and principled outcomes. See *Norfleet I*, 317 Mich App at 654. Accordingly, the trial court erred by failing to provide reasons specific to the offense and the offender that would justify its imposition of consecutive sentences in relation to the R&O-CSI sentence. We thus vacate the "consecutive sentencing" aspect of the judgment of sentence and remand the case for the trial court to more fully articulate its rationale for imposing consecutive sentences, just as the sentencing court did on remand in *Norfleet*. See *Norfleet II*, 321 Mich App at 72-73.[3]

---

[3] To be clear, on remand the trial court is not required to impose consecutive sentences if the court, on further reflection based on the pertinent authorities governing the issue, concludes that consecutive sentences should not be imposed.

Defendant next argues that although the jury did not find that he acted intentionally, the trial court's comments at sentencing demonstrated that the court believed that defendant intended to harm Trooper DeVries. And this belief, according to defendant, provided the basis, among other reasons, for the 100-month minimum sentence on the R&O-CSI conviction and for the court's decision to impose consecutive sentences. We, however, are not persuaded that the trial court relied on acquitted conduct when sentencing defendant.

Once a jury acquits a defendant of a crime, it is a violation of due process for a trial court to sentence the defendant as if he or she had committed the crime for which the defendant was acquitted. *People v Beck*, 504 Mich 605, 609; 939 NW2d 213 (2019). As proof that the trial court relied on acquitted conduct in this case, defendant cites the following comments and remarks made by the court when fashioning its sentences:

> Defendant's hands were empty until the officer attempt[ed] to detain the Defendant. The Defendant then clearly and intentionally secure[d] possession of a handgun in his hand, such that his finger [was] on the trigger and a round [could] be discharged. There was no other explanation for what occurred there.

> [Defendant] secured that handgun from the concealment on his person and discharged it into Trooper DeVries. The jury found beyond a reasonable doubt that this was not accidental because they did find, at a minimum, here, at least, that it was a reckless or careless use of a firearm, not accidental.

A fair reading of the trial court's comments indicates only that Trooper DeVries was injured by a gunshot from a firearm carelessly or recklessly discharged by defendant. The trial court's use of the term "intentionally" clearly referred to defendant's possession of the firearm. Defendant had nothing in his hands when he exited the car, and then Trooper DeVries was injured by a gun carelessly, recklessly, or negligently fired by defendant. At some point, defendant necessarily had to have intentionally possessed the gun in such a way that it could discharge. Defendant interprets the trial court's statement that defendant "discharged [the gun] into Trooper DeVries" as reflecting a determination by the court that defendant intended to harm the trooper. But, when read in the context of defendant's insistence at trial that the gun discharged "accidentally," by which defendant implied that it discharged randomly or independently of anything that he did, the trial court's comment is fairly construed as reiterating the jury's finding that defendant's carelessness or recklessness caused the gun to fire. The trial court's remarks did not suggest that the court imposed a sentence on the belief and basis that defendant intentionally shot Trooper DeVries. Accordingly, defendant has failed to establish that the trial court considered acquitted conduct when sentencing defendant.

Lastly, defendant argues that his within-guidelines 100-month minimum sentence for R&O-CSI was unreasonable and disproportionate.[4] We disagree. MCL 769.34(10) provides, in its opening sentence, that "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent

---

[4] Defendant's minimum sentence guidelines range was 50 to 100 months' imprisonment.

an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." Application of this provision would compel us to affirm given that there were no scoring errors nor was there any reliance on inaccurate sentencing information. But, while this appeal was pending, our Supreme Court issued an opinion holding that the first sentence of MCL 769.34(10) is unconstitutional. *People v Posey*, 512 Mich 317, 326 (lead opinion by BOLDEN, J., joined by BERNSTEIN, J.), 361 (CAVANAGH, J.), 376 (WELCH, J.); ___ NW2d ___ (2023). On remand to this Court, the *Posey* panel, noting the mix of opinions by the Justices, summarized the Supreme Court's ultimate holding as follows:

> Furthermore, the latter three Justices agreed with Justice BOLDEN's pronouncements in her lead opinion that within-guidelines sentences are to be reviewed for reasonableness, that reasonableness review requires a determination whether a sentence was proportionate, that there is a nonbinding presumption of proportionality, meaning that a within-guidelines sentence is not binding on the Court of Appeals, that the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate, and that a within-guidelines sentence may indeed be disproportionate or unreasonable. [*People v Posey (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 345491); slip op at 2 (quotation marks and citations omitted).]

The Michigan Supreme Court in *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), ruled:

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender. [Quotation marks omitted.]

With respect to defendant's argument that the within-guidelines minimum sentence was unreasonable and disproportionate, "a court may consider all record evidence, including the contents of a [presentence investigation report], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). The key test is not whether a sentence departs from or adheres to the guidelines range but whether the sentence is proportionate to the seriousness of the matter. *Steanhouse*, 500 Mich at 472. With respect to proportionality, the Supreme Court in *Milbourn*, 435 Mich at 668, "observed that the Legislature has determined to visit the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system."

Defendant contends that his 100-month minimum sentence is unreasonable and disproportionate for several reasons. First, defendant argues that the sentencing guidelines adequately accounted for Trooper DeVries's injuries, making a sentence at the very top of the guidelines range unreasonable. Defendant does not explain how this argument establishes that a sentence at the upper limit of the guidelines range is disproportionate. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). We thus reject the argument.

Next, defendant contends that the jury "acquitted him of intentionally shooting Trooper DeVries" and that this verdict was consistent with an "accidental, albeit reckless (or negligent) discharge of the weapon." The implication of this argument is that the trial court erred when it found that defendant did not fire the gun accidentally and that, to the extent that this error served as the basis for the trial court's sentence at the top of the guidelines range, the sentence was disproportionate to the offense. But the trial court's observation that the jury found "that it was a reckless or careless use of a firearm, [and] not accidental" pertained to the court's decision to depart upward from the guidelines relative to the CRNFCI sentence, not the court's sentence for the R&O-CSI conviction. Defendant's argument that the trial court considered the nature of defendant's discharge of the weapon when sentencing him for the R&O-CSI conviction is speculative. Moreover, even if relevant to the R&O-CSI sentence, the trial court's statement did not render the 100-month minimum sentence unreasonable or disproportionate. The jury indeed found that defendant's discharge of the gun was reckless, careless, or negligent, and the court's reference to the absence of an accident clearly revealed the court's reasonable rejection of defendant's suggestion that he did nothing to make the gun fire.[5] Accordingly, we conclude that defendant's argument does not merit resentencing.

Finally, defendant argues that the trial court did not consider mitigating factors, such as defendant's being shot twice in the head, causing loss of an eye and complete blindness; defendant's acceptance of responsibility for possessing a gun, expressions of sincere remorse, and requests for forgiveness from the trooper and his family; and defendant's difficult childhood. Contrary to defendant's argument, the sentencing transcript indicates that the trial court considered some of these factors and concluded that they did not lessen the sentencing consequences of defendant's actions. After listening to defendant's allocution during sentencing, the trial court commented that it was clear to the court that defendant was "capable to think, articulate, and avoid completely the behavior [he] engaged in on October 6, 2021." The trial court viewed defendant's conduct during the incident as incomprehensible and inexplicable. The court construed defendant's allocution as a product of the opportunity to think about what had transpired and evidence that defendant was "capable of much better behavior than that" exhibited during the criminal episode. Nevertheless, the trial court insisted that defendant's sentence needed to reflect

---

[5] This issue is semantical in nature. Defendant views an injury arising from reckless, careless, or negligent conduct as being "accidental," whereas the trial court, in concluding that the shooting was no "accident," plainly views an accident as an event in which there is no fault or culpability. The term "accident" is used in both contexts. We cannot conclude that the trial court's comments were inconsistent with the jury's verdict.

the choices that he made on the night of the shooting. We note that the fact that defendant was shot in the head, which resulted in his blindness, did not support a lesser minimum sentence, as it was defendant's own conduct that led to Trooper DeVries's reasonable protective response to shoot defendant given the circumstances.

With respect to his childhood, defendant recounted that he lost his mother at an early age, was raised by his grandmothers, was placed in his father's custody when he was 10 years old, and immigrated with his father to the United States. For purposes of the presentence investigation report, defendant indicated that although he did not have a "very good childhood," he was "never subjected to any abuse or neglect during his youth." Defendant has not provided any authority to support the proposition that his adverse childhood experiences may be mitigating factors for purposes of sentencing a defendant who was not 18 years old or a minor at the time of the criminal activity. Nor has defendant explained how his childhood circumstances might have affected his decision-making and behavior at the time of the criminal transaction.

In sum, we conclude that defendant has not overcome the nonbinding presumption that the trial court's imposition of a minimum prison sentence of 100 months for the R&O-CSI conviction was proportionate to the offense and the offender. The 100-month minimum sentence served the "the traditional objectives of sentencing—punishment, deterrence, protection, retribution, and rehabilitation[.]" *People v Garay*, 506 Mich 936, 936, 949 NW2d 673 (2020).

## III. CONCLUSION

We affirm defendant's convictions and the individual sentences for each crime, but we vacate the "consecutive sentencing" aspect of the judgment of sentence and remand the case to the trial court for a more-detailed articulation of its reasons for imposing consecutive sentences should the court remain of the view that consecutive sentencing is appropriate. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Thomas C. Cameron

-10-