*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LARISIO L. JOHNSON,

        Defendant-Appellant.

FOR PUBLICATION
March 14, 2024
9:00 a.m.

No. 362236
Berrien Circuit Court
LC No. 2021-003934-FH

Before: SWARTZLE, P.J., and REDFORD and YATES, JJ.

YATES, J.

Defendant, Larisio L. Johnson, took his girlfriend's car, led police officers on a high-speed chase, crashed the vehicle into a police car, and ran from the police, who eventually captured him. For that conduct, a jury convicted defendant on charges of fleeing and eluding, third degree, MCL 257.602a(3), malicious destruction of police property, MCL 750.377b, and two counts of resisting or obstructing a police officer, MCL 750.81d(1). But the jury could not reach a verdict on charges of unlawfully driving away an automobile and receiving and concealing a stolen vehicle. The trial court sentenced defendant to serve concurrent prison terms for fleeing and eluding and malicious destruction of police property, but ordered the prison terms for the counts of resisting or obstructing a police officer to run consecutive to those sentences. Defendant concedes that the trial court had discretion to order consecutive sentences under MCL 750.81d(6), but he asserts that the trial court abused that discretion in choosing to impose consecutive sentences. We affirm.

## I. FACTUAL BACKGROUND

On December 2, 2021, defendant, his girlfriend, Jasmine Motton, and Jasmine's mother, Rochelle Motton, went to Jasmine's grandparents' house after learning that Jasmine's grandfather was having a medical emergency. When they arrived, Jasmine and her mother went inside, while defendant stayed in the car, which was parked in the driveway. The car—a 2018 Mercedes-Benz— was registered to Jasmine and her mother, but defendant claimed that he had helped make the down payment on the car and so he had permission to drive the car whenever he wanted.

Jasmine and others pleaded with defendant not to drive the car away from the grandparents' house. Jasmine testified at trial that she told defendant he did not have permission to take the car.

Defendant testified that, after waiting in the car for an extended period of time, he fell asleep and was subsequently awakened by people telling him to get out of the car without giving him a reason. Defendant explained that he was confused by what was happening, so he drove away in the car to use the bathroom at a nearby gas station.

Eventually, the Mercedes-Benz wound up in a parking lot at Jasmine's mother's apartment complex. Two police officers driving marked police vehicles responded to the apartment complex after a witness called police to report a stolen car. When the police saw the Mercedes-Benz in the parking lot, they tried to conduct a traffic stop. Instead of stopping, the Mercedes-Benz then drove around the two police cars, which were blocking the exit from the parking lot. In doing so, the Mercedes-Benz hit one of the police cars.

A chase ensued through the streets of Benton Harbor at speeds reaching 70 to 80 miles per hour. After about five minutes, a police car blocked an intersection in the path of the chase. When the Mercedes-Benz arrived at that intersection, it slammed into the police car. After the collision, defendant jumped out of the Mercedes-Benz and tried to run away from the scene. Police officers pursued defendant on foot for a short distance and then apprehended him.

Once in police custody, defendant told the police officers that he had not been driving the Mercedes-Benz, but instead he had been kidnapped and the kidnapper had led police on the chase. At trial, defendant testified and filled out his story that he had been kidnapped at gun point by an unidentified, masked individual and that he was merely an unwilling passenger in the chase. Police officers testified that they never saw anyone else in the car and that, after the crash, they only saw defendant running away. The jury was not persuaded by defendant's claim that he was kidnapped. They convicted him of four crimes related to the chase. But the jurors could not reach a unanimous verdict on two charges related to defendant's alleged theft of the Mercedes-Benz, so a mistrial was declared for those two charges.

At defendant's sentencing hearing on May 25, 2022, neither side contested the trial court's discretion to impose consecutive sentences on the convictions for resisting or obstructing a police officer. In deciding that consecutive sentences were appropriate, the trial court listed many factors that supported its decision. The trial court noted that at the time of the offenses, defendant was on bond for operating while intoxicated. The trial court also found that defendant stole the Mercedes-Benz and fled when police tried to stop him, eventually striking a police vehicle. Further, the trial court stated that defendant had been convicted previously of possession of cocaine, burglary, and armed robbery. The trial court emphasized that defendant had been sentenced to prison for three separate offenses, yet he still was undeterred from engaging in the criminal conduct he exhibited in this case. Consequently, the trial court deemed consecutive prison terms the more appropriate option in sentencing defendant for resisting or obstructing police officers.

The trial court computed defendant's sentencing guidelines ranges for the four offenses of conviction as follows: 14 to 58 months' imprisonment on defendant's convictions for fleeing and eluding and malicious destruction of property; and 7 to 46 months' imprisonment for defendant's convictions for resisting or obstructing a police officer. The trial court imposed concurrent prison terms of 18 months to 20 years for third-degree fleeing and eluding and 18 months to 15 years for malicious destruction of property. The trial court imposed concurrent prison terms of 18 months to 15 years on the two counts of resisting or obstructing a police officer, but ordered those prison

sentences to run consecutive to the prison terms for fleeing and eluding and malicious destruction of property. Consequently, even though the trial court ordered consecutive sentences that require defendant to serve at least 36 months in prison, i.e., an 18-month minimum plus a consecutive 18-month minimum, that aggregate 36-month minimum term of imprisonment still falls comfortably within the sentencing guidelines ranges for each of the offenses of conviction.

On December 29, 2022, defendant filed a motion to correct what he described as an invalid sentence, asserting that the trial court erred in imposing consecutive sentences without articulating on the record any viable justification for consecutive sentences. On May 25, 2023, the trial court held a hearing on defendant's motion. Defense counsel asserted that the factors on which the trial court based the consecutive sentences were already considered in scoring the sentencing guidelines and the trial court failed to articulate an appropriate basis for the consecutive sentences. Defense counsel stated that the "double counting . . . may at this point not be as a matter of law [improper] but a matter of discretion your Honor can decline to do that. And that's what we would like to ask you to do." Defense counsel conceded that *People v Robinson*, unpublished per curiam opinion of the Court of Appeals, issued January 19, 2023 (Docket No. 357885), was on point and held that "double counting" was permitted, but defense counsel argued that *Robinson* was wrongly decided and observed that the defendant in *Robinson* had a pending application for leave to appeal to our Supreme Court. Defense counsel also reiterated that even if the trial court had the legal authority to impose consecutive sentences, it likewise had discretion not to impose consecutive sentences. Finally, during the hearing, defense counsel presented an additional argument that did not appear in the motion, asserting that it was inappropriate to base a consecutive sentence on the trial court's belief that defendant had stolen the Mercedes-Benz because the jury was unable to reach a verdict on either charge arising from that conduct.

At the conclusion of the hearing, the trial court ruled that sufficient grounds for consecutive sentences had been articulated at the sentencing hearing, and the trial court reiterated those bases. Specifically, the trial court stated that consecutive sentences were justified because of the high rate of speed at which defendant drove on city streets during the chase, defendant was on bond at the time of the incident, defendant stole the Mercedes-Benz (which could be considered because that was not acquitted conduct), somebody could have been seriously injured or even killed because of defendant's conduct, defendant had committed new criminal offenses despite being sentenced to prison on "three separate occasions," and because of his high Prior Record Variable (PRV) score (which was initially scored at 110 and later corrected to 105). The trial court opined that it could only amend an invalid sentence, and defendant had not presented any persuasive argument that his consecutive sentences were invalid. The trial court noted the absence of legal authority suggesting that it was improper to consider a fact for consecutive sentencing that was also considered in setting the sentencing guidelines range. Accordingly, the trial court declined to amend the sentences that it had imposed. Defendant now challenges his consecutive sentences in this appeal of right.

## II. LEGAL ANALYSIS

Defendant contends that the trial court abused its discretion when it imposed consecutive sentences. In support of that contention, defendant faults the trial court for making three separate errors. First, defendant asserts the trial court incorrectly based its decision to impose consecutive sentences on factors that were already considered in determining the sentencing guidelines range. Second, defendant claims that the trial court improperly based its consecutive sentences on its own

finding that defendant stole the Mercedes-Benz even though the jury could not reach a unanimous verdict on the charges alleging that defendant stole the car. Finally, defendant argues that the trial court made a factual error in stating that defendant had been to prison three times. We shall address each of these arguments in turn.

We can begin on common ground. "In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (quotation marks and citation omitted). Pursuant to MCL 750.81d(6), a prison term for a violation of MCL 750.81d "may run consecutively to any term of imprisonment imposed for another violation arising from the same transaction." Thus, the trial court had statutory authority to order defendant's prison terms for his convictions for resisting or obstructing a police officer to run consecutive to the prison terms for his other convictions, but whether to impose concurrent or consecutive prison terms was a matter left to the discretion of the trial court. A trial court's decision to impose consecutive sentences is subject to review only "for an abuse of discretion, i.e., whether the trial court's decision was outside the range of reasonable and principled outcomes." *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016). To facilitate appellate review, "trial courts imposing one or more discretionary consecutive sentences are required to articulate on the record the reasons for each consecutive sentence imposed." *Id*. In this case, defendant faults the trial court in numerous respects for failing to fulfill that duty, so we must consider each purported shortcoming by the trial court.

## A. RELIANCE ON FACTORS ALREADY CONSIDERED BY THE GUIDELINES

Defendant argues that the trial court committed an error of law when it based the imposition of consecutive sentences upon factors that were considered in calculating the sentencing guidelines range. As an initial matter, defendant waived any challenge to the legality of imposing consecutive sentences on the basis of factors that were considered in the sentencing guidelines. Waiver is "the intentional relinquishment or abandonment of a known right." *People v Carines*, 460 Mich 750, 752 n 7; 597 NW2d 130 (1999) (quotation marks and citation omitted). To waive a known right, a party must "clearly express[ ] satisfaction with a trial court's decision . . . ." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). A waiver extinguishes any claim of error on appeal. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).

At the hearing on defendant's motion to correct an invalid sentence, defense counsel stated that the alleged "double counting . . . may at this point not be as a matter of law [improper] but a matter of discretion your Honor can decline to do that." Defense counsel expressly represented to the trial court that it was not improper to consider facts both in the sentencing guidelines analysis and for the purpose of imposing consecutive sentences. On appeal, however, defendant argues the exact opposite, insisting the trial court was legally prohibited from considering a factor under both the sentencing guidelines and as a basis for imposing consecutive sentences. Defendant waived appellate review of that issue through the statements of his counsel at the hearing on his motion to correct an invalid sentence.

But even if defendant did not waive appellate review of the double-counting issue, he has not demonstrated that the trial court erred. Defendant contends that *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017), holds that a trial court cannot impose consecutive sentences based upon factors that were considered in the sentencing guidelines scoring. In *Dixon-Bey*, this

Court discussed the factors that trial courts may consider when determining whether to sentence a defendant outside the applicable sentencing guidelines range. This Court observed that "[b]ecause the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a 'useful tool' or 'guideposts' for effectively combating disparity in sentencing." *Id*. at 524-525. This Court explained that "relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight[.]" *Id*. at 525 (citations omitted).

In a recent unpublished opinion, a panel of this Court addressed whether *Dixon-Bey* applies to consecutive sentences. *Robinson*, unpub op at 5. The panel determined that the defendant had not offered any authority to establish that the holding of *Dixon-Bey* also applies in the context of consecutive sentences. *Id*. Therefore, the panel rejected the defendant's claim that the trial court erred "by relying on factors that were already considered in the sentencing guidelines as a basis for imposing a consecutive sentence." *Id*. Here, at the hearing on defendant's motion to correct an invalid sentence, defendant acknowledged that *Robinson* was on point, but argued that *Robinson* was wrongly decided. Although defendant did "concede" that he had no authority to support his position that *Robinson* was incorrectly decided, he asserted that the *Robinson* panel's decision that consecutive sentencing was distinguishable from the departure sentence at issue in *Dixon-Bey* did not make sense.

On appeal, defendant does not offer any persuasive argument that this Court should come to a different conclusion than this Court reached in *Robinson*. Defendant merely suggests that this Court should reject *Robinson*. Although an unpublished opinion does not have precedential value, this Court may follow an unpublished opinion if its reasoning is persuasive. MCR 7.215(C)(1); *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004). Defendant has not presented any argument that persuades us we should reject *Robinson* and conclude that *Dixon-Bey* applies to consecutive sentences. Furthermore, defendant has failed to establish the factual predicate for his argument, i.e., the factors the trial court cited in imposing consecutive sentences were taken into account in setting defendant's sentencing guidelines range. Even if we agreed with defendant that *Dixon-Bey* applies to factors cited in imposing consecutive sentences, the trial court could still rely on "factors considered by the guidelines but given inadequate weight" in order to justify imposing a consecutive sentence. See *Dixon-Bey*, 321 Mich App at 525.

In imposing consecutive sentences on defendant, the trial court cited defendant's criminal history, including his PRV score of 105 and the fact that he was on bond when he committed the crimes for which he was convicted in this case. The trial court explained how those factors were not adequately considered by the sentencing guidelines, noting that the PRV score was "extremely high" and, in fact, one of the highest PRV scores the trial court had ever seen. The trial court also noted that defendant's PRV score did not account for the fact that defendant's crimes of conviction and the crime for which defendant was on bond were dangerous traffic offenses. And significantly, defendant's PRV score of 105 was far above the 75+ point threshold for the highest PRV category, meaning that the PRV scale did not adequately account for defendant's extensive criminal history. Accordingly, the trial court did not err by citing factors as the bases for consecutive sentences that were also considered in calculating defendant's sentencing guidelines range.

## B. CONSIDERATION OF CONDUCT RESULTING IN A HUNG JURY

Defendant faults the trial court for violating established precedent by imposing consecutive sentences based on conduct that supported charges on which the jury could not reach a unanimous verdict. Specifically, defendant asserts that the trial court had no legal right to penalize him in its sentencing decision for stealing the Mercedes-Benz. Defendant relies on *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019), but that case involved consideration of acquitted conduct in selecting the sentence. As our Supreme Court put it: "Little would seem to 'more undermine the fairness of the fact-finding process' than having the fact-finder render a not-guilty verdict yet allow the judge to impose a sentence based on his own conclusion that the defendant *did* commit the acquitted offense." *Id*. at 627 n 23. But the Supreme Court limited the scope of that approach, noting that "[w]hen a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard." *Id*. at 626.

Panels of this Court have consistently concluded that *Beck* does not apply to hung juries. *People v Reiher*, unpublished per curiam opinion of the Court of Appeals, issued November 21, 2019 (Docket No. 343234), p 7; *People v Tarrant*, unpublished per curiam opinion of the Court of Appeals, issued December 10, 2020 (Docket No. 348470), p 8. Although defendant contends that *Beck* is relevant to the analysis of his sentences, that is belied by the language of *Beck* itself. In *Beck*, our Supreme Court was explicit that the rule it prescribed applies to acquitted conduct only, and does not apply "[w]hen a jury has made no findings . . . ." *Beck*, 504 Mich at 626. Therefore, defendant's request to apply *Beck* when the jury made no findings, which directly contravenes the language of *Beck*, appears counterintuitive. Indeed, our recent unpublished opinions lead us to the opposite result. *Reiher*, unpub op at 7; *Tarrant*, unpub op at 8. Accordingly, we reject defendant's invitation to apply *Beck* to the trial court's consideration of conduct on which the jury reached no verdict.

## C. MISTAKE OF FACT

Finally, defendant asserts that his consecutive sentences rest on a mistake of fact about his history of imprisonment. "A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). "[A] sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997) (citation omitted). Defendant's presentence investigation report (PSIR) states that, in September 2007, defendant was sentenced to serve a 30-day jail term for possession of cocaine in Milwaukee County. In December 2008, defendant committed the crime of burglary in Milwaukee, but the charge against him was not resolved until he entered a plea 4½ years later—in June 2013— and he was sentenced to serve 1 year in prison for burglary. In March 2012, defendant committed armed robbery and aggravated unlawful restraint in Cook County, Illinois. Thereafter, defendant was convicted in November 2012 and sentenced to 7 years in prison for armed robbery and 3 years for aggravated unlawful restraint.

At the hearing on defendant's motion to correct an invalid sentence, defendant asserted that his prison sentences for burglary, armed robbery, and aggravated unlawful restraint were all served concurrently. Thus, defendant has three previous convictions for which he was sentenced to prison and one prior conviction for which he was sentenced to jail. Defendant has advanced no challenge

to the accuracy of that information contained in the PSIR. At defendant's sentencing hearing, the trial court referred to defendant's prior convictions for possession of cocaine, burglary, and armed robbery. Also, the trial court observed that defendant had previously been sentenced to prison for three separate crimes. That appears to refer to the prison sentences for defendant's convictions for burglary, armed robbery, and aggravated unlawful restraint. Defendant was sentenced to a 30-day jail term for the conviction for possession of cocaine. At the motion hearing and again on appeal, defendant criticizes the language that the trial court used in describing his criminal history.

To support his claim that the trial court made a mistake of fact, defendant identifies specific statements that the trial court made at the sentencing hearing and at the subsequent motion hearing. First, at sentencing, the trial court said defendant had "been sentenced on three separate—well, for three separate offenses, to prison." That statement is factually accurate. Defendant was sentenced to prison for convictions of burglary, armed robbery, and aggravated unlawful restraint. Second, at the hearing on defendant's motion to correct an invalid sentence, the trial court commented that defendant had been sentenced to prison "on three separate occasions" and that defendant "has been to prison on three separate occasions and on three separate offenses." Shortly after the trial court made those statements, however, defendant corrected the trial court by stating that he was in prison in Illinois when he pleaded guilty to the burglary charge in Milwaukee. Defense counsel informed the trial court that defendant "did not have three periods of imprisonment. He did have those three prior convictions but he was only in prison once." The trial court responded that the sentences "all may have been at one time," but the trial court meant that defendant had "three prior convictions for which he was in prison." The trial court followed up by stating, "[s]o that could be that they all happened to run at the same time but they were three different serious felony offenses." Defense counsel responded, "Right." Therefore, the trial court understood that it was considering the fact that defendant had committed those offenses and was imprisoned because of them.

To the extent that the trial court used imprecise language at the motion hearing to describe defendant's record, the trial court later corrected itself. The trial court's explanation that defendant had "three prior convictions for which he was in prison" squares with the trial court's completely accurate statement at the sentencing hearing that defendant had been sentenced "for three separate offenses, to prison." The trial court's statements at the motion hearing were merely a recapitulation of its explanation of the sentences that it imposed at the sentencing hearing. A misstatement at the motion hearing does not establish that defendant's sentences were based on inaccurate information. Indeed, those sentences had already been imposed and justified at defendant's sentencing hearing. Accordingly, defendant has failed to establish that, to the extent the trial court made any inaccurate statements about his prison record, defendant was sentenced on the basis of inaccurate information.

Affirmed.

/s/ Christopher P. Yates
/s/ Brock A. Swartzle
/s/ James Robert Redford