*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL JUSTIN HYDE,

        Defendant-Appellant.

UNPUBLISHED
May 16, 2024

No. 363397
Eaton Circuit Court
LC No. 2021-020195-FC

Before: JANSEN, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of assault with intent to murder (AWIM), MCL 750.83; two counts of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; intentional discharge of a firearm from a vehicle, MCL 750.234a(1)(a); felon in possession of a firearm (felon-in-possession), MCL 750.224f; five counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; carrying a concealed weapon (CCW), MCL 750.227; fourth-degree fleeing and eluding, MCL 257.602a(2); and operating a motor vehicle without a license, MCL 257.301. The trial court, applying a fourth-offense habitual offender enhancement under MCL 769.12, sentenced defendant to five terms of 50 to 75 years' imprisonment for AWIM, AWIGBH, intentional discharge of a firearm from a vehicle, and felon-in-possession; to five terms of two years' imprisonment for felony-firearm; to two terms of 144 days in jail for CCW and fourth-degree fleeing and eluding; and to 90 days in jail for operating a motor vehicle without a license. The court ordered that the sentences be served consecutively to 8-to-30-year sentences that defendant was serving in connection with offenses committed in Livingston County. We affirm.

Defendant's convictions arose from his shooting at three police officers following a high-speed chase. One bullet narrowly missed hitting one of the officers, Charlotte Police Department Sergeant Joseph Brown. At the time of the offenses, defendant was out on bond for various charges that were pending in Livingston County. On appeal, defendant contends that (1) the prosecutor failed to prove the requisite *mens rea* for AWIM, (2) his attorney should have requested a special mitigation instruction in connection with the AWIM charge, (3) the prosecutor made improper comments during closing arguments, (4) his 50-year minimum sentences were unreasonable and

disproportionate, and (5) the trial court failed to adequately articulate its reasoning for ordering that the current sentences be served consecutively to the sentences for the Livingston County offenses.

## I. SUFFICIENCY OF THE EVIDENCE FOR AWIM

Defendant first contends that the prosecutor presented insufficient evidence of the intent element for AWIM. "This Court reviews de novo claims of insufficient evidence, viewing the evidence in the light most favorable to the prosecution, to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010).

The elements of AWIM are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996) (quotation marks and citation omitted). This Court has emphasized that, to properly convict a person of AWIM, the prosecutor must prove that the defendant had an actual intent to kill, *People v Brown*, 267 Mich App 141, 148; 703 NW2d 230 (2005), and defendant contends that the prosecutor did not prove this intent.

"The intent to kill may be proven by inference from any facts in evidence." *Davis*, 216 Mich App at 53 (quotation marks and citation omitted). Indeed, "[c]ircumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *Bennett*, 290 Mich App at 472. "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to establish a defendant's intent to kill." *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). Also, in analyzing a claim of insufficient evidence, this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses. *Id*. at 228-229. Conflicts in the evidence are resolved in the prosecution's favor. *Id*. at 229.

Defendant emphasizes the following passage from *People v Cochran*, 155 Mich App 191, 193-194; 399 NW2d 44 (1986):

> Specific intent to kill is the only form of malice which supports the conviction of assault with intent to commit murder. Intent to inflict great bodily harm or wanton and wilful disregard of the recklessness of one's conduct is insufficient to support a conviction for assault with intent to commit murder. [Citation omitted.]

Defendant contends that he was attempting to commit "suicide by cop," that he had no intent to kill anyone, and that he acted only recklessly or with a conscious disregard to whether anyone would be killed.

The evidence as a whole, however, adequately countered defendant's "suicide by cop" theory and adequately proved an intent to kill. The evidence showed that defendant first saw the police by the Meijer store in Charlotte, and when he saw that they had followed him onto I-69, he drove at posted speeds. When backup eventually became available, the police activated their flashing lights (because defendant's vehicle matched the description of a vehicle involved in a prior "shots fired" incident). Defendant admitted that when the lights were activated, he accelerated to a very high rate of speed in an attempt to reach the city limits, because he believed

that the police would stop pursuing him at that point. He was concerned about outstanding warrants he had. When his vehicle began malfunctioning and decelerating, he fired multiple shots toward the police. A bullet hit Sergeant Brown's vehicle and very narrowly missed entering the area where his head was situated. When defendant exited his stalled vehicle, he did not approach the police with his gun raised but instead fled on foot. The gun was recovered on top of defendant's vehicle and found to be empty of cartridges. All this evidence was sufficient to prove that defendant was attempting to kill the police in order to escape. The jurors, as the arbiters of credibility, were free to disbelieve defendant's testimony that he did not intend to kill anyone and was instead attempting to commit "suicide by cop." The AWIM conviction was adequately supported by proof beyond a reasonable doubt, and no due-process violation occurred. See *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").[1]

## II. MITIGATION INSTRUCTION

Defendant next contends that his attorney rendered ineffective assistance of counsel by failing to request a special mitigation instruction in connection with the charge of AWIM.

Because defendant failed to move in the trial court for a new trial or evidentiary hearing, this claim is unpreserved and review is limited to the existing record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). To obtain relief on the basis of ineffective assistance of counsel, a party "must show that counsel's performance fell short of [an] objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the defendant's trial would have been different." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks, citation, and brackets omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted).

Defendant contends that his trial attorney should have requested a special, modified mitigation instruction for the AWIM charge[2] that stated as follows:

> [T]he defendant can only be guilty of the crime of AWIM if he would have been guilty of murder had the person he assaulted actually died and he acted with the specific intent to kill; and . . . other forms of intent are not enough to be guilty of AWIM, such as an intent to commit great bodily harm, recklessness, knowingly

---

[1] This conclusion renders moot defendant's argument on appeal that if this Court vacated his AWIM conviction, he would be entitled to resentencing on his other convictions. See *People v Cathey*, 261 Mich App 506, 510; 681 NW2d 661 (2004) ("An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy.").

[2] M Crim JI 17.4 states, in part, that "[i]f the assault took place under circumstances that would have reduced the charge to manslaughter if the person had died, the defendant is not guilty of assault with intent to commit murder." This instruction was not applicable because required elements for manslaughter were not present.

creating a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions, or wanton and willful disregard of the same risk.

Defense counsel did not act below an objective standard of reasonableness by failing to request this instruction because the jurors were explicitly informed by the trial court that, in order to convict defendant of AWIM, they needed to find that defendant "intended to kill the person that he assaulted." They were also given the option of concluding that defendant was guilty of a lesser charge in connection with Sergeant Brown and intended only to cause him great bodily harm, commit a battery on him, or make him reasonably fear an immediate battery. The jurors rejected the two potential lesser charges that were presented and instead convicted defendant of AWIM. Under these circumstances, the special instruction that defendant contends should have been requested was unnecessary. In addition, there is no reasonable probability that the outcome of the trial would have been different had counsel requested the instruction. *Ackley*, 497 Mich at 389. As such, reversal is unwarranted in this regard.

## III. PROSECUTORIAL ERROR

Defendant next contends that the prosecutor committed error requiring reversal during closing arguments. Because defendant did not object to these comments, this issue is unpreserved. *Unger*, 278 Mich App at 234-235. We review unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), mod on other grounds by *People v King*, 512 Mich 1; 999 NW2d 670 (2023). Under the plain-error doctrine, reversal is warranted if a "clear or obvious" error occurred that "affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. And even if this standard is satisfied,

an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 763-764 (citation, quotation marks, and brackets omitted).]

Defendant takes issue with the following statements (italicized) made by the prosecutor in closing arguments:

He made the decision—he made all these conscious decisions, if you believe him. He made all these conscious decisions to put the gun in the car. To run. To tap copicide [sic: "suicide by cop"]. One conscious decision, apparently, he didn't make was that he was going to shot [sic] back at the police. That one, no, no, no, he wasn't trying to shot [sic] them. He's just shooting at them. *I might submit to you that there's really not a—that's a difference without a distinction*.

* * *

I might submit to you that if you make the decision to fire a gun in the direction of another human being, that you're intending to harm them. This isn't like a wild west movie where you're—somebody's over here with six shooting [sic] firing at the foot of somebody trying to make them dance. That's not life. If you

-4-

take—make the decision to take a handgun and fire with—if you listen to the video, somewhere upward of 13 rounds you can hear on the video, in the direction of another human being, you are intending to kill them. *And if you're doing so while you're driving down the road and throwing them over the side of your shoulder, you're absolutely indifferent to whether you killed them or not. You don't care.* [Emphasis added.]

Defendant contends that the prosecutor was implying that something less than an intent to kill was a sufficient *mens rea* for AWIM.

In *People v Duncan*, 402 Mich 1, 16; 260 NW2d 58 (1977), the Michigan Supreme Court stated that a prosecutor's remarks are to be examined "in the context in which they were made." The pertinent question is whether the defendant received a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Defendant has not demonstrated a clear or obvious error in connection with the prosecutor's remarks because the prosecutor was attempting to respond to defendant's theory of the case, which was that he intentionally aimed his shots above the police because he was only trying to scare them, did not mean to harm them, and was attempting to commit "suicide by cop." A comment that might otherwise be seen as improper may not require reversal if it is responsive to matters raised by a defendant's proofs. *Duncan*, 402 Mich at 16. In addition, and importantly, the prosecutor, in between the two sets of italicized comments, stated, "I have to prove that [defendant] had the intent to kill." The prosecutor also emphasized that the jurors needed to follow the judge's instructions, and the judge instructed the jury that AWIM requires an intent to kill. Under these circumstances, no plain error requiring reversal occurred. *Carines*, 460 Mich at 763.

Defendant also contends that his attorney rendered ineffective assistance of counsel by failing to object to the prosecutor's comments. Because there is no reasonable probability that the outcome of the trial would have been different had counsel objected to the remarks, defendant's claim fails. *Ackley*, 497 Mich at 389.

## IV. SENTENCING

Defendant next contends that his within-guidelines 50-year concurrent minimum sentences were unreasonable and disproportionate.[3]

"[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the

---

[3] A plurality of the Michigan Supreme Court ruled in *People v Posey*, 512 Mich 317; 1 NW3d 101 (2023), that within-guidelines sentences are subject to proportionality review. See *People v Posey (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 345491), lv pending on app; slip op at 1-2 (discussing the plurality).

offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks and citation omitted).

The guidelines were scored at 270 to 900 months, and the court imposed 50-year concurrent minimum sentences. The court explained why it imposed the sentences it did. In *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972), the Michigan Supreme Court mentioned the goals of sentencing as "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses." The trial court went through each of these factors. It stated that services to rehabilitate defendant were simply not available in light of his "abysmal" criminal record and the fact that he had not succeeded in multiple rehabilitation programs that had already been offered to him. It stated that defendant needed to be imprisoned to protect society, in light of his inability to be rehabilitated. The court stated that defendant needed to be imprisoned as punishment and indicated that a long prison term would hopefully deter others from trying to harm law-enforcement officers.

Defendant contends that the 50-year minimum sentences were unreasonable because no bullets struck anyone and it was questionable whether he had the intent to kill. But the jury found, on the basis of sufficient evidence, that he *did* have such an intent, and it was only by pure chance that Sergeant Brown was not killed. Defendant also complains that the trial court improperly failed to allow for rehabilitation, but the court explained that defendant already had multiple chances to be rehabilitated and had not succeeded. The offenses here were exceptionally serious: defendant initiated a very high-speed chase and shot at multiple police officers, coming very close to killing one of them. He had a lengthy and escalating criminal history that included malicious destruction of property, resisting and obstructing, and delivery of methamphetamine. He was out on bond from Livingston County for fleeing and eluding, furnishing contraband to prisoners, and possession of methamphetamine when he committed the instant offenses. In light of these circumstances, we conclude that no abuse of discretion is apparent with regard to the sentencing.[4]

Lastly, defendant argues that the trial court violated *People v Norfleet*, 317 Mich App 649, 666; 897 NW2d 195 (2016), by failing to properly articulate why it was ordering that defendant's sentences for the current offenses be served consecutively to his sentences for the Livingston

---

[4] The court ordered that the sentences be served consecutively to the sentences arising out of the Livingston County case. In *People v Harden*, 434 Mich 196, 202; 454 NW2d 371 (1990), the Court stated, "[B]ecause of criminal acts that a defendant has chosen to commit, two or more consecutive sentences, each of which is less than life, may have the cumulative effect of assuring that the remainder of the defendant's life will be spent in prison. Such an outcome does not conflict with the express will of the Legislature." To the extent defendant is attempting to make additional contentions about a "de facto life sentence," he has not adequately developed and supported such an argument. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (quotation marks and citation omitted).

County case.[5]  Under MCL 768.7b(2)(a), the trial court has discretion to impose consecutive sentencing if a defendant commits a subsequent felony while the disposition of a prior felony is still pending.  Defendant does not dispute that he was out on bond for the crimes he committed in the Livingston County case when he committed the instant offenses.

At sentencing, the prosecutor stated:

> And I'm gonna ask this court utilize its discretion and make those sentences consecutive to his current term of—of incarceration with the Department of Corrections for the Livingston County case, on which he was on bond at the time this occurred.

> Because what was he on bond for?  He was on bond for running from the police.  In fact, he was on bond for running from the police in the very vehicle that he ran from the police in [in] this case, the same one.  Might explain why he blew it up fleeing this time.

The court, after going through the various sentencing considerations and imposing sentence, stated:

> In this case, the court will exercise it's [sic] discretion, as requested by the prosecutor.  I do not believe that I have ever done this before, at least not that I recall.  But, this sentence will run consecutive to the . . . Livingston County sentence that has been indicated  . . . on this record.

Defendant argues on appeal that the trial court ran afoul of *Norfleet*, 317 Mich App at 666, by failing to give particularized reasons for the consecutive sentencing.  We conclude that the present case is distinguishable from *Norfleet*, wherein the Court remanded the case for further articulation.  See *id*.  First, in *Norfleet*, the Court was concerned that the trial court imposed consecutive sentences multiple times without justifying each instance.  *Id*.  Here, only one imposition of consecutive sentencing is at issue on appeal, and it seems apparent from context that the trial court, in imposing it, was relying, at least in part, on the various factors it had already discussed in detail.  Moreover, the court referred to the "exercise [of its] discretion as requested by the prosecutor."  As such, the court was referring back to the reason given by the prosecutor for consecutive sentencing, i.e., the fact that defendant committed the instant offenses—involving a high-speed police chase—while on bond for fleeing and eluding.  Given these circumstances, we conclude that a remand for further articulation is unnecessary.

---

[5] The decision to impose consecutive sentencing is reviewed for an abuse of discretion.  See *Norfleet*, *id*. at 664.  However, defendant is arguing here about a *lack of sufficient articulation*.

Affirmed.

/s/ Kathleen Jansen
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien